IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 16-31975 |
| GOODRICH PETROLEUM | § | |
| CORPORATION, | § | (Chapter 11) |
| | § | |
| DEBTOR | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 16-31976 |
| GOODRICH PETROLEUM COMPANY, | § | |
| LLC, | § | (Chapter 11) |
| | § | |
| DEBTOR | § | |

EMERGENCY MOTION FOR ORDER DIRECTING
JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF
YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE
A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU
MUST FILE AND SERVE YOUR RESPONSE IN THE UNITED STATES
WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR
RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE
GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE
RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.
IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN
AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE
PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER
EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT
THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT
CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU
WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO
THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE
EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU
SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR
ATTORNEY.

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[1] file this *Emergency Motion for Order Directing Joint Administration of the Debtors' Chapter 11 Cases* (the "Motion") and respectfully submit the following:

## JURISDICTION AND PROCEDURAL BACKGROUND

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.   This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     On April 15, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (each a "Case" and collectively, the "Cases").

4.     Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5.     As of the date hereof, an official committee of unsecured creditors has not been appointed in the Cases.

## EMERGENCY CONSIDERATION

6.     The Debtors request emergency consideration of this Motion.   The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations.   Any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.   As such, the Debtors believe that emergency consideration is necessary and request that this Motion be heard at the Debtors' First Day Hearings.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include: Goodrich Petroleum Corporation (6193) and Goodrich Petroleum Company, L.L.C. (7273).

## STATEMENT OF FACTS

**A.     Business Overview**

7.     Goodrich Petroleum Corporation, a Delaware corporation ("Goodrich") is an independent oil and natural gas company engaged in the exploration, development, and production of oil and natural gas properties.  Goodrich Petroleum Company, L.L.C. ("Goodrich Subsidiary") is Goodrich's direct wholly owned subsidiary.

8.     The Debtors' producing properties are located primarily in (i) Northwest Louisiana and East Texas, which includes the Haynesville Shale Trend, (ii) Southwest Mississippi and Southeast Louisiana, which includes the Tuscaloosa Marine Shale Trend, and (iii) South Texas, which includes the Eagle Ford Shale Trend.  The Debtors maintain an administrative office in Houston, Texas.  As of December 31, 2015, the Debtors owned interests in 193 producing oil and natural gas wells located in 43 fields in eight states and the Debtors had estimated proved reserves of approximately 9.1 MMBoe, comprised of 31.9 Bcf of natural gas and 3.8 MMBbls of oil and condensate.

9.     Nearly all of the Debtors' proved oil and natural gas reserves are located in Louisiana, Texas, and Mississippi.  The Debtors presently have an ongoing development portfolio of prospects that it desires to drill.  Future capital spending will be initially directed toward long lateral wells in the Haynesville Shale Trend.  The Debtors also plan to devote a portion of future capital expenditures on drilling and completion activity in the Tuscaloosa Marine Shale Trend.

10.     Additional information concerning the Debtors and their financial condition and results of operations, on a consolidated basis, can be found in Goodrich's annual, quarterly, and

current reports filed with the Securities and Exchange Commission ("SEC"), which can be accessed at www.sec.gov and at Goodrich's website, http://www.goodrichpetroleum.com.

**B.     Secured Debt**

11.     Goodrich Subsidiary is the borrower under the Second Amended and Restated Credit Agreement between the Goodrich Subsidiary, Wells Fargo, National Association, as Administrative Agent (in its capacity as Administrative Agent, the "Senior Credit Facility Agent"), and certain lenders party thereto from time to time, dated May 5, 2009 (as heretofore amended, restated, supplemented or otherwise modified, the "Credit Agreement"), which governs the Debtors' senior secured revolving credit facility (the "Senior Credit Facility").  Goodrich Subsidiary's obligations under the Credit Agreement were guaranteed by Goodrich, and the obligations of the Debtors were secured by liens on substantially all of the assets owned by the Debtors, including, but not limited to, all of the real and personal property of the Debtors, including, without limitation, all equipment, all inventory, all oil, gas, and other hydrocarbons, all as-extracted collateral and all products and substances derived therefrom (including all raw materials and work in process, finished goods, and materials used or consumed in the manufacture or production thereof), all goods, all accounts, cash, payment intangibles, deposit accounts, accounts receivable, and other rights to payment.  As of March 29, 2016, the Debtors had $40.25 million of borrowings outstanding under the Senior Credit Facility.

12.     On March 12, 2015, the Debtors sold 100,000 units (the "Units"), each consisting of a $1,000 aggregate principal amount at maturity of the 8.00% Second Lien Senior Secured Notes due 2018 (the "8.00% Second Lien Notes") and one warrant to purchase 48.84 shares of the Common Stock (defined below).  The 8.00% Second Lien Notes are guaranteed by the Goodrich Subsidiary.  The Debtors received proceeds, before offering expenses payable by the

Debtors, of $100 million from the sale of the Units. The proceeds from the issuance of the 8.00% Second Lien Notes were used to repay borrowings under the Senior Credit Facility and for general corporate purposes. The 8.00% Second Lien Notes are secured on a senior second-priority basis by liens on assets of the Debtors that secure the Senior Credit Facility, which liens are subject to an inter-creditor agreement in favor of the lenders under the Senior Credit Facility. The 8.00% Second Lien Notes mature on March 15, 2018. If the aggregate principal amount outstanding on the 2032 Notes (defined below) on August 1, 2017 is more than $25.0 million then the outstanding amount of the 8.00% Second Lien Notes shall be due on September 1, 2017. Interest on the 8.00% Second Lien Notes is payable semi-annually in arrears on March 15 and September 15 of each year, beginning on September 15, 2015. As of March 29, 2016, $100 million in aggregate principal amount of the 8.00% Second Lien Notes remains outstanding plus accrued and unpaid interest.

13.     On October 1, 2015, the Debtors issued 38,250 units, each consisting of a $1,000 aggregate principal amount at maturity of the 8.875% Second Lien Senior Secured Notes due 2018 (the "8.875% Second Lien Notes" and, together with the 8.00% Second Lien Notes, the "Second Lien Notes") and one warrant to purchase approximately 156.9 shares of the Common Stock, in exchange for $76.5 million aggregate principal amount of the 2019 Notes (defined below). In addition, the Debtors issued approximately $36.8 million aggregate principal amount of the 8.875% Second Lien Notes in exchange for approximately $81.7 million aggregate principal amount of the 2019 Notes. The 8.875% Second Lien Notes are guaranteed by the Goodrich Subsidiary. The 8.875% Second Lien Notes are secured on a senior second-priority basis by liens on certain assets of the Debtors that secure the Senior Credit Facility, which liens are subject to an inter-creditor agreement in favor of the lenders under the Senior Credit Facility.

The 8.875% Second Lien Notes mature on March 15, 2018.  If the aggregate principal amount outstanding on the 2032 Notes (defined below) on August 1, 2017 is more than $25.0 million then the outstanding amount of the 8.875% Second Lien Notes shall be due on September 1, 2017.  Interest on the 8.875% Second Lien Notes is payable semi-annually in arrears on March 15 and September 15 of each year, beginning on March 15, 2016.  As of March 29, 2016, the $75 million in aggregate principal amount of the 8.875% Second Lien Notes remains outstanding plus accrued and unpaid interest.

**C.      Unsecured Debt**

14.     On March 2, 2011, Goodrich sold $275 million of their 8.875% Senior Notes due 2019 (the "2019 Notes").  The 2019 Notes are senior unsecured obligations and rank equally in right of payment to all of Goodrich's other existing and future unsecured indebtedness.  The 2019 Notes accrue interest at a rate of 8.875% annually, and interest is paid semi-annually in arrears on March 15 and September 15.  The 2019 Notes are guaranteed by Goodrich Subsidiary. As of March 29, 2016, approximately $116.8 million aggregate principal amount of the 2019 Notes remains outstanding plus accrued and unpaid interest.

15.     In September 2009, the Debtors sold $218.5 million of the 5.00% Convertible Senior Notes due 2029 (the "2029 Notes").  The 2029 Notes are senior unsecured obligations, and as of March 29, 2016, approximately $6.7 million in aggregate principal amount of the 2029 Notes remains outstanding plus accrued and unpaid interest.

16.     The Debtors entered into separate, privately negotiated exchange agreements in August 2013 under which the Debtors retired $166.7 million in aggregate principal amount of the outstanding 2029 Notes in exchange for the issuance of 5.00% Convertible Senior Notes due 2032 (the "2032 Notes") in an aggregate principal amount of $166.3 million.  The 2032 Notes

are unsecured obligations of the Debtors that will mature on October 1, 2032.  As of March 29, 2016, $94.2 million in aggregate principal amount of the 2032 Notes remains outstanding plus accrued and unpaid interest.

17.     On September 8, 2015, the Debtors closed a privately-negotiated exchange under which the Debtors retired $55.0 million in principal amount of outstanding 2032 Notes in exchange for the issuance of approximately $27.5 million in aggregate original principal amount of 5.00% Convertible Exchange Senior Notes due 2032  (the "2032 Exchange Notes").  In addition, on October 14, 2015, the Debtors closed a privately-negotiated exchange under which the Debtors retired approximately $17 million in principal amount of outstanding 2032 Notes in exchange for the issuance of approximately $8.5 million in aggregate original principal amount of 2032 Exchange Notes.  The 2032 Exchange Notes are unsecured obligations of the Debtors. As of March 29, 2016, $6.1 million in aggregate principal amount of the 2032 Exchange Notes remains outstanding plus accrued and unpaid interest.

**D.     Preferred and Common Stock**

18.     As of March 29, 2016, approximately $0.4 million in aggregate principal amount of Goodrich's 3.25% Convertible Senior Notes due 2026 (the "2026 Notes" and, together with the 2019 Notes, the 2029 Notes, the 2032 Notes, and the 2032 Exchange Notes, the "Unsecured Notes") remains outstanding plus accrued and unpaid interest.  The 2026 Notes are unsecured obligations of the Debtors.

19.     As of March 31, 2016, the Debtors have 1,483,441 shares issued and outstanding of their 5.375% Series B Cumulative Convertible Preferred Stock (the "Series B Preferred Stock"), for a total liquidation value of $74,172,050.

20.     As of March 31, 2016, the Debtors have 3,060,412 depositary shares issued and outstanding each representing a 1/1000th ownership interest in a share of the 10.00% Series C Cumulative Preferred Stock (the "Series C Preferred Stock"), for a total liquidation value of $76,510,300.

21.     As of March 31, 2016, the Debtors have 3,621,070 depositary shares issued and outstanding each representing a 1/1000th ownership interest in a share of the 9.75% Series D Cumulative Preferred Stock (the "Series D Preferred Stock"), for a total liquidation value of $90,526,750.

22.     As of March 31, 2016, the Debtors have 2,902,539 depositary shares issued and outstanding each representing a 1/1000th ownership interest in a share of the 10.00% Series E Cumulative Convertible Preferred Stock (the "Series E Preferred Stock" and, together with the Series B Preferred Stock, the Series C Preferred Stock, and the Series D Preferred Stock, the "Preferred Stock"), for a total liquidation value of $29,025,390.  The Preferred Stock ranks senior to the Common Stock and all Preferred Stock has parity with respect to the payment of dividends and distribution of assets upon liquidation, dissolution, or winding up.

23.     Goodrich is a publicly traded company, and as of March 31, 2016, Goodrich has 78,067,160 shares of Common Stock issued and outstanding.[2]

**E.     Other Significant Obligations**

---

[2] On January 13, 2016, the Debtors announced that they had received notification from the New York Stock Exchange ("NYSE") that the NYSE had commenced proceedings to delist the Common Stock as a result of the NYSE's determination that the Common Stock was no longer suitable for listing on the NYSE based on "abnormally low" price levels, and the NYSE suspended trading in the Common Stock.  The Series C Preferred Stock and Series D Preferred Stock were also suspended in connection with the suspension of the Common Stock. The Debtors began trading the Common Stock under the symbol "GDPM" on the OTC Markets marketplace (the "OTC") on January 14, 2016.  Both the Series C and Series D Preferred Stock will begin trading on the OTC under the symbols "GDPAL" and "GDUEL," respectively, upon receipt of clearance from the Financial Industry Regulatory Authority ("FINRA").  The Series E Preferred Stock was approved by FINRA on March 7, 2016 and began trading under the stock symbol "GDRRP."

24.     The Debtors are party to several significant pre-petition contracts.  In one of the largest of such contracts, Chesapeake Louisiana, L.P. ("Chesapeake LP") and Goodrich Subsidiary are parties to a long-term Gas Marketing Agreement (the "GMA") whereby Chesapeake Operating, LP ("Chesapeake Operating") charges Goodrich Subsidiary fees for its marketing services.  The GMA further allows Chesapeake Operating to deduct from the sale proceeds a proportionate share of any post-production expenses charged or deducted by gas purchasers, including marketing fees.  The GMA has a 20 year primary term starting December 1, 2008.

25.     Additionally, Goodrich Subsidiary and Frio LaSalle Pipeline, LP ("Frio La Salle") entered into a Gas Gathering and Processing Agreement (the "Frio La Salle Agreement"), that was amended and restated on October 1, 2012, where Frio La Salle agreed to construct certain processing facilities in order to connect wells being drilled by Goodrich Subsidiary to Frio La Salle's pipeline system in Frio and LaSalle Counties, Texas.  The Frio La Salle Agreement provides terms where Frio La Salle will gather, treat, compress, dehydrate, stabilize, condition, and process the gas produced by the Goodrich Subsidiary.

26.     Other agreements continue to burden the Debtors, including (i) a sales agreement with Champions Pipe and Supply, Inc., which began June 1, 2015 and ends November 10, 2016, and provides for casing supplies pertaining to the Tuscaloosa Marine Shale formation (the "Champions Agreement"), and (ii) a promissory note under which Goodrich Subsidiary promised to pay Fallon Family, L.P. the principal sum of one million ($1,000,000) in ten (10) equal semi-annual installment payments, with the first payment made on October 15, 2015 (the "Fallon Note").  The Champions Agreement and the Fallon Note are significant pre-petition obligations.

27.     In the ordinary course of business, the Debtors utilize an assortment of vendors, including drilling contractors, labor and repair contractors, parts and equipment suppliers, pipeline companies, heavy machinery and equipment lessors, hydrocarbon transporters, laborers, professionals, and employee benefits providers.

**F.     Events Leading to Chapter 11**

28.     A confluence of factors in 2015 and 2016 led to the Debtors' need to pursue a financial restructuring.

29.     The Debtors are an exploration and production company with interests in non-conventional oil and natural gas shale properties that require large investments of capital to develop.  The current significant decline in crude oil prices and the continued depressed natural gas prices has negatively impacted the Debtors' cash flows that enable them to invest in and maintain their properties and service their long term obligations.

30.     Beginning in the second half of 2014, commodity prices, particularly crude oil, began to decline sharply.  The decline became precipitous late in the fourth quarter of 2014 through 2015 and into 2016.  The significant magnitude of this price decline has materially and adversely impacted the Debtors' results of operations and led to substantial changes in the Debtors' operating and drilling programs in 2015 and into 2016.  As a result, the Debtors have focused on managing their balance sheet to reduce leverage and preserve liquidity during the current low commodity price environment.

31.     The Debtors have taken numerous actions to mitigate the effects of lower crude oil prices to conserve capital and enhance liquidity, including but not limited to: (i) dramatically reducing their capital expenditures in 2015 and 2016; (ii) generating savings by negotiating cost reductions from service providers; (iii) freezing salaries at 2014 levels, (iv) reducing the staff

headcount approximately 60% from 2014 levels; (v) reducing discretionary expenditures; (vi) extending the maturity of the Senior Credit Facility to February 24, 2017; (vii) receiving proceeds from the issuance of $100 million in 8.00% Second Lien Notes in March 2015; (viii) receiving net proceeds of $47.5 million from the sale of 12,000,000 shares of Common Stock to the public on March 10, 2015; (ix) closing the sale of proved reserves and a portion of the associated leasehold in the Eagle Ford Shale Trend in September 2015 for proceeds of approximately $110 million; (x) in September and October 2015, exchanging an aggregate of $72.1 million of the 2032 Notes for $36.0 million of new 2032 Exchange Notes, thereby reducing future annual cash interest by $1.8 million; (xi) in October 2015, exchanging $158.2 million of the 2019 Notes for $75.0 million of the 8.875% Second Lien Notes, thereby reducing their future annual cash interest by $7.4 million; (xii) suspending all preferred stock dividend payments beginning in the third quarter of 2015 to conserve capital.

32.     In addition, the Debtors attempted to restructure their liabilities under a comprehensive recapitalization plan to reduce their cost structure and improve their operating results, cash flow from operations, liquidity, and financial condition (the "Recapitalization Plan").  On January 26, 2016, the Debtors launched the Recapitalization Plan consisting of, among other transactions: (i) offers to exchange (the "Preferred Stock Exchange Offers") any and all shares of Goodrich's outstanding Series B Preferred Stock, any and all depositary shares, of Goodrich's outstanding Series C Preferred Stock, any and all of the depositary shares of Goodrich's outstanding Series D Preferred Stock, and any and all of the depositary shares of Goodrich's outstanding Series E Preferred Stock for newly issued shares of Common Stock, (ii) offers to exchange (the "Unsecured Notes Exchange Offers" and, together with the Preferred Stock Exchange Offers, the "Exchange Offers") any and all of the Debtors' outstanding

Unsecured Notes for newly issued shares of Common Stock; and (iii) private negotiations with holders of the Second Lien Notes (the "Second Lien Noteholders") to offer to exchange (the "Second Lien Exchange Offers") outstanding Second Lien Notes for new notes with materially identical terms except that interest thereon may be either (a) paid at the Debtors' option, in cash or in-kind or (b) deferred for some period of time (up to maturity).   Concurrently with the Exchange Offers, the Debtors called a special meeting of its stockholders to approve (i) an amendment to the Debtors' Restated Certificate of Incorporation increasing the number of authorized shares of the Debtors' Common Stock to 400 million (the "Authorized Share Amendment Proposal") to allow for the issuance of Common Stock in the various exchanges and (ii) amendments to the Certificate of Designation of each series of Preferred Stock that would, if approved, allow the Debtors to mandatorily concert such series of Preferred Stock into Common Stock at the rate offered in the applicable Exchange Offer.

33.     The closing of the Unsecured Notes Exchange Offers was conditioned on, among other things, holders of at least 95% of the aggregate principal amount of outstanding Unsecured Notes properly tendering and not validly withdrawing their Unsecured Notes in the Unsecured Notes Exchange Offers, or voluntarily converting their Unsecured Notes into Common Stock in accordance with the terms of such Unsecured Notes (the "Minimum Unsecured Tender Condition").   The closing of the Preferred Stock Exchange Offers was conditioned on, among other things, holders of at least a majority of the shares of Preferred Stock either properly tendering and not validly withdrawing their shares of Preferred Stock in the Preferred Stock Exchange Offers, or voluntarily converting their Preferred Stock into Common Stock in accordance with the terms of such Preferred Stock (the "Minimum Preferred Tender Condition" and, together with the Minimum Unsecured Tender Condition, the "Minimum Tender

Conditions"). Also, both Exchange Offers were conditioned on the Debtors' common shareholders approving the Authorized Share Amendment Proposal.

34.     The Exchange Offers expired on April 8, 2016.  Holders of approximately 62% of the principal amount of outstanding Unsecured Notes tendered their notes to be exchanged and holders of approximately 43% of shares of outstanding Preferred Stock tendered their shares to be exchanged.  Because the Minimum Tender Conditions were not met, the Company did not accept for exchange any of the Unsecured Notes or shares of Preferred Stock validly tendered and not withdrawn prior to the Expiration Date.  In addition, a quorum was not reached at Goodrich's special meeting of stockholders on April 8, 2016 and the Authorized Share Amendment Proposal was not approved by a majority of the Debtors' outstanding common stockholders.

35.     The combination of the factors noted above and the failure of a sufficient number of holders of Unsecured Notes and Preferred Stock to tender their notes or shares in the Exchange Offers to meet the Minimum Tender Conditions compelled the Debtors to negotiate with their creditors regarding Chapter 11 proceedings in order to address liquidity concerns and maximize the value of their assets for the benefit of their creditors and other constituencies.

36.     The Debtors opted to conserve cash as they negotiated towards a restructuring by electing to exercise their right to a 30-day grace period with respect to certain interest payments due (i) March 15, 2016 on its $5.2 million interest payment due on its 2019 Notes, $4.0 million interest payment due on its 8.00% Second Lien Notes and $3.0 million interest payment due on its 8.875% Second Lien Notes and (ii) April 1, 2016 on its $0.2 million interest payment due on its 2029 Notes, $2.4 million interest payment due on its 2032 Notes and a $0.2 million interest

payment due on its 2032 Exchange Note.  The grace period with respect to the interest payments due on March 15, 2016 expired on April 14, 2016.

37.     On March 28, 2016, the Debtors and each of the Second Lien Noteholders' party thereto (the "Consenting Noteholders") executed a restructuring support agreement (as may be amended, supplemented, or otherwise modified from time to time, both as to substance and parties thereto) (the "Restructuring Support Agreement").  The Restructuring Support Agreement sets forth, subject to certain conditions, the commitment to and obligations of, on the one hand, the Debtors, and on the other hand, each of the Consenting Noteholders, in connection with a restructuring of the Debtors pursuant to the restructuring term sheet attached thereto.

38.     On April 11, 2016, the Debtors launched a solicitation of votes by eligible voters to accept or reject a joint prepackaged chapter 11 plan of reorganization (the "Prepackaged Plan").[3]  By its terms, the Prepackaged Plan provided, *inter alia*, for: (i) payment in full, in cash, of all allowed administrative claims, professional fee claims, priority tax claims, statutory fees, other priority claims, and other secured claims; (ii) Senior Credit Facility claims are unimpaired and will receive such treatment as is mutually agreed to by the Debtors, the holders of Senior Credit Facility claims, and the Majority Second Lien Noteholders, which is still being negotiated and will be set forth in the plan supplement; (iii) Second Lien Notes will be converted for 100% of the new Goodrich equity interests, subject to dilution from shares issued in connection with a management incentive plan; (iv) unsecured notes claims will be canceled and extinguished; (v) holders of general unsecured claims will not receive a distribution under the Prepackaged Plan; (vi) equity interests in Goodrich Subsidiary will be reinstated and will vest in the company as a reorganized company; and (vii) equity interests in Goodrich will be canceled and discharged.

---

[3] The Second Lien Noteholders are the only voters eligible to vote on the Prepackaged Plan.

The deadline to accept or reject the Prepackaged Plan is 5:00 p.m. (Central Standard Time) on May 6, 2016, unless extended.

39.     The Prepackaged Plan will substantially reduce the Debtors' debt burden and solidify the Debtors' long-term growth and operating performance.  As such, the Debtors seek to proceed as expeditiously as possible through their chapter 11 cases to effectuate the restructuring under the Prepackaged Plan.

**<u>RELIEF REQUESTED</u>**

40.     The Debtors seek an order consolidating the administration of the Cases for procedural purposes only as follows:

  a. One docket shall be maintained for the Cases, under the case number assigned to Goodrich Petroleum Corporation.

  b. All pleadings, orders, and other papers filed shall be captioned *In re Goodrich Petroleum Corporation, et al.*, Case No. 15-31975 (Jointly Administered).

  c. The Office of the United States Trustee ("<u>UST</u>") shall conduct joint informal meetings with the Debtors, as required, and a joint first meeting of creditors.

  d. One plan and disclosure statement may be filed for all of the Cases by any plan proponent; however, substantive consolidation of the Debtors' estates is not being requested at this time.

  e. Unless otherwise required by the Court, each Debtor will file separate schedules of assets and liabilities and statements of financial affairs, and, as applicable, lists of equity security holders.

  f. Proofs of claim filed by creditors of any Debtor shall reflect the caption and case number of the Debtor to which the claim relates and in which Case such claim is to be filed.

  g. A separate claims register shall be maintained for each Debtor.

## BASIS FOR RELIEF REQUESTED

41.     Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides for the joint administration of cases involving a debtor and its affiliates that are pending before the same court.  FED. R. BANKR. P. 1015(b).  An "affiliate" is an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ."  11 U.S.C. 101(2).

42.     The Debtors are related.  Goodrich Petroleum Corporation is the direct parent and sole equity interest owner of Goodrich Petroleum Company, LLC.  Accordingly, the Debtors are "affiliates," as that term is defined by Bankruptcy Code § 101(2).  Therefore, joint administration of the Cases is appropriate under Bankruptcy Rule 1015(b).

43.     The Debtors anticipate that notices, applications, motions, other pleadings, hearings, and orders in the Cases may affect all of the Debtors.  If each Case were administered independently, there would be a number of duplicative pleadings and overlapping service.  This unnecessary duplication of identical documents would be wasteful of the resources of the Debtors' estates, as well as the resources of this Court and of other parties in interest.

44.     Joint administration will permit the Clerk of the Court to use a single general docket for all of the Cases and to combine notices to creditors and other parties in interest by ensuring that all parties in interest will be able to review one docket to stay apprised of the various matters before the Court regarding all of the Cases.

45.     Moreover, supervision of the administrative aspects of the Cases by the UST will be simplified.   Therefore, joint administration will promote the economical and efficient administration of the Debtors' estates to the benefit of the Debtors, their creditors, the UST, and the Court.

46.     Joint administration will not give rise to any conflict of interest among the Debtors' estates.  The rights of the Debtors' respective creditors will not be adversely affected by the proposed joint administration because the Debtors will continue as separate and distinct legal entities.  Each creditor will be required to file a proof of claim against the applicable estate in which it allegedly has a claim or right and will retain whatever claims or rights it has against the particular estate.  The recoveries of all creditors will be enhanced by the reduction in costs resulting from joint administration of the Cases.  The Court will also be relieved of the burden of scheduling duplicative hearings, entering duplicative orders, and maintaining redundant files.

47.     A proposed consolidated caption for all notices, applications, motions, and other pleadings is set forth below.  The Debtors submit that all parties' use of the simplified caption below will eliminate cumbersome and confusing procedures and ensure a uniformity of pleading identification.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **IN RE:** | § § § | **CASE NO. 16-31975** |
| **GOODRICH PETROLEUM CORPORATION,** | § § | **(Chapter 11)** |
| *et al.* | § § | **JOINTLY ADMINISTERED** |
| **DEBTORS** | § | |

48.     The Debtors also seek this Court's direction that a notation substantially similar to the following be entered on the docket of each of the Cases to reflect the joint administration of the Cases:

An order has been entered in this case directing the procedural consolidation and joint administration of the chapter 11 cases of Goodrich

Petroleum Corporation and Goodrich Petroleum Company, LLC.  The docket in Case No. 16-31975 should be consulted for all matters affecting the case.

49.     No administrative or scheduling orders previously entered in the Cases will require modification if this Motion is granted.  Mailing lists in each of the Cases will be consolidated for future noticing requirements.

50.     No prior motion for the relief requested herein has been made to this or any other Court.

## NOTICE

51.     Notice of this Motion has been provided by e-mail, facsimile, or overnight delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the lenders under the Senior Credit Facility; (c) counsel to certain holders of the Second Lien Notes; (d) counsel to the administrative agent under the Senior Credit Facility; (e) counsel to the indenture trustee and collateral agent under the Notes; (f) the Debtors' 20 largest unsecured creditors (on a consolidated basis); (g) those persons who have formally appeared in the Cases and requested service pursuant to Bankruptcy Rule 2002; (h) the Securities and Exchange Commission; (i) the Internal Revenue Service; and (j) all other applicable government agencies to the extent required by the Bankruptcy Rules and the Bankruptcy Local Rules.

## **PRAYER**

The Debtors respectfully request that the Court enter an Order directing that the Cases be consolidated for procedural purposes only and providing for the joint administration thereof. The Debtors further request that the Court grant them such other and further relief to which they may be justly entitled.

Dated:  April 15, 2016

Respectfully submitted,

**VINSON & ELKINS LLP**


By:    */s/ Bradley R. Foxman*
Harry A. Perrin, SBT # 1579800
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Ph. (713) 758-2222
Fax  (713) 758-2346
hperrin@velaw.com

and

Bradley R. Foxman, SBT # 24065243
Garrick C. Smith, SBT # 24088435
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX  75201-2975
Ph.  (214) 220-7700
Fax  (214) 220-7716
bfoxman@velaw.com
gsmith@velaw.com

and

David S. Meyer, NY # 4576344
Lauren R. Kanzer, NY # 5216635
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Ph.  (212) 237-0000
Fax (212) 237-0100
dmeyer@velaw.com
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE
DEBTORS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 15, 2016, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/ Bradley R. Foxman_      
One of Counsel

**<u>Proposed Order</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 16-31975** |
| **GOODRICH PETROLEUM** | § | |
| **CORPORATION,** | § | **(Chapter 11)** |
| | § | |
| **DEBTOR** | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 16-31976** |
| **GOODRICH PETROLEUM COMPANY,** | § | |
| **LLC,** | § | **(Chapter 11)** |
| | § | |
| **DEBTOR** | § | |
| | § | |

**ORDER GRANTING EMERGENCY MOTION FOR ORDER DIRECTING**
**JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES**

On April _____, 2016, the Court considered the *Emergency Motion for Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. ___] (the "Motion")[1] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"),[2] the Court orders that the above-captioned Cases are jointly administered. Additionally, the following checked items are ordered:

1.　　X　　One disclosure statement and plan of reorganization may be filed for all of the Cases by any plan proponent.

2.　　X　　Case No. 16-31976 shall be transferred to Judge Isgur, who has the lowest numbered case.

3.　　X　　Parties may request joint hearings on matters pending in any of the Cases.

4.　　X　　Other: see below.

---

[1] Capitalized terms not defined herein have the meaning set forth in the Motion.

[2] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include: Goodrich Petroleum Corporation (6193) and Goodrich Petroleum Company, L.L.C. (7273).

**ORDER GRANTING EMERGENCY MOTION FOR ORDER DIRECTING**
**JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES**

The Court finds upon consideration of the Motion that: (a) joint administration of the Cases is in the best interests of the Debtors, their estates, creditors, and interest holders; and (b) proper and adequate notice of the Motion has been given.  Therefore, it is

**ORDERED** that the Motion is **GRANTED** to the extent provided herein.  It is further

**ORDERED** that the Cases be and hereby are jointly administered by this Court for procedural purposes only in accordance with Bankruptcy Rule 1015(b) under the Case styled *In re Goodrich Petroleum Corporation*, Case No. 16-31975 (the "Lead Case").  It is further

**ORDERED** that the procedural consolidation shall be for administrative purposes only and shall not be a substantive consolidation of the Debtors' estates.  It is further

**ORDERED** that the Bankruptcy Clerk shall maintain one file for the Cases, except that all schedules of assets and liabilities and statements of financial affairs required by Bankruptcy Rule 1007 shall be captioned and filed in the dockets of each separate Case, as appropriate.  It is further

**ORDERED** that the Bankruptcy Clerk (or a claims agent if separately approved by this Court) shall maintain separate claim registers for each Case and all proofs of claim shall be filed in the Case in which such claims are asserted.  It is further

**ORDERED** that the United States Trustee shall conduct joint informal meetings with the Debtors, if required, and a joint first meeting of creditors.  It is further

**ORDERED** that the joint caption of the Cases shall read as set forth immediately below:

**ORDER GRANTING EMERGENCY MOTION FOR ORDER DIRECTING
JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **IN RE:** | § | **CASE NO. 16-31975** |
| | § | |
| **GOODRICH PETROLEUM** | § | **(Chapter 11)** |
| **CORPORATION,** | § | |
| *et al.* | § | **JOINTLY ADMINISTERED** |
| | § | |
| **DEBTORS** | | |

It is further

      **ORDERED** that if pleadings, papers, and documents have been filed in any of the Cases other than the Lead Case prior to the entry of this Order, and those matters have not yet been heard and decided, the party who filed the pleading, paper, or document shall: (a) file that pleading, paper, or document in the Lead Case within three business days of the entry of this Order; (b) set the pleading, paper, or document for hearing before the judge assigned to the Lead Case; and (c) notice the hearing to all appropriate parties.  It is further

      **ORDERED** that a docket entry shall be made in each of the Cases substantially as follows:

      An order has been entered in this case directing the procedural consolidation and joint administration of the chapter 11 cases of Goodrich Petroleum Corporation and Goodrich Petroleum Company, LLC.  The Docket in Case No. 16-31975 should be consulted for all matters affecting the case.

Dated: April _____, 2016

 

_____
**UNITED STATES BANKRUPTCY JUDGE**

**ORDER GRANTING EMERGENCY MOTION FOR ORDER DIRECTING
JOINT ADMINISTRATION OF THE DEBTORS' CHAPTER 11 CASES**