**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GOODRICH PETROLEUM** | § | **CASE NO. 16-[INSERT]** |
| **CORPORATION,** *et al.* | § | |
| | § | **(Chapter 11)** |
| | § | **(Joint Administration Requested)** |
| **DEBTORS.**[1] | § | |

**DEBTORS' JOINT PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**THIS IS A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE, 11 U.S.C. §§ 1125, 1126. THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING COMMENCEMENT OF SOLICITATION AND THE DEBTORS' FILING FOR RELIEF UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE INFORMATION IN THIS PLAN IS SUBJECT TO CHANGE. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**VINSON & ELKINS LLP**

Harry A. Perrin, SBT # 15796800
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Ph. (713) 758-2222
Fax  (713) 758-2346
hperrin@velaw.com

Bradley R. Foxman, SBT # 24065243
Garrick C. Smith, SBT # 24088435
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201-2975
Ph.  (214) 220-7700
Fax  (214) 220-7716
bfoxman@velaw.com
gsmith@velaw.com

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include: Goodrich Petroleum Corporation (6193) and Goodrich Petroleum Company, L.L.C. (7273).

David S. Meyer, NY # 4576344
Lauren R. Kanzer, NY # 5216635
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Ph.  (212) 237-0000
Fax (212) 237-0100
dmeyer@velaw.com
lkanzer@velaw.com

**PROPOSED ATTORNEYS FOR THE DEBTORS**

# TABLE OF CONTENTS

ARTICLE I        DEFINITIONS AND CONSTRUCTION OF TERMS....................................1

    Section 1.01    Scope of Defined Terms; Rules of Construction ........................................1
    Section 1.02    Definitions..................................................................................................1
    Section 1.03    Rules of Interpretation ............................................................................13
    Section 1.04    Computation of Time ...............................................................................13
    Section 1.05    Reference to Monetary Figures.................................................................13
    Section 1.06    Reference to Debtors or Reorganized Debtors .........................................13

ARTICLE II       UNCLASSIFIED CLAIMS ...................................................................14

    Section 2.01    Administrative Claims .............................................................................14
    Section 2.02    Priority Tax Claims.................................................................................14
    Section 2.03    Professional Fee Claims..........................................................................14

ARTICLE III      CLASSIFICATION AND TREATMENT
                    OF CLAIMS AND EQUITY INTERESTS...........................................15

    Section 3.01    Introduction.............................................................................................15
    Section 3.02    Voting; Presumptions..............................................................................15
    Section 3.03    Summary of Classification of Claims .....................................................16
    Section 3.04    Classification and Treatment of Claims and Equity Interests...................16
    Section 3.05    Special Provision Regarding Unimpaired Claims ....................................19
    Section 3.06    Cram Down..............................................................................................20
    Section 3.07    Elimination of Vacant Classes ................................................................20
    Section 3.08    Votes Solicited in Good Faith.................................................................20

ARTICLE IV      MEANS FOR IMPLEMENTATION OF THE PLAN............................20

    Section 4.01    General Settlement of Claims and Equity Interests .................................20
    Section 4.02    Voting of Claims.....................................................................................21
    Section 4.03    Issuance of New Goodrich Equity Interests.............................................21
    Section 4.04    Additional Funding .................................................................................21
    Section 4.05    Material Terms of the Management Incentive Plan...................................21
    Section 4.06    Bankruptcy Restructuring .......................................................................22
    Section 4.07    Continued Corporate Existence ...............................................................22
    Section 4.08    Amended Governance Documents ...........................................................23
    Section 4.09    Cancellation of Notes, Certificates, and Instruments...............................23
    Section 4.10    Revesting of Assets.................................................................................24
    Section 4.11    Preservation of Rights of Action; Settlement ..........................................24
    Section 4.12    Employee and Retiree Benefits................................................................24
    Section 4.13    Workers' Compensation Programs ..........................................................25
    Section 4.14    Exemption From Certain Transfer Taxes .................................................25
    Section 4.15    Surrender of the Second Lien Notes ........................................................25
    Section 4.16    Section 1145 Exemption ..........................................................................26
    Section 4.17    Authority.................................................................................................26
    Section 4.18    Continuing Effectiveness of Final Orders................................................27

i

ARTICLE V        PROVISIONS REGARDING DISTRIBUTIONS ..........................................27

    Section 5.01    Distributions for Claims and Equity Interests Allowed as of the
Effective Date ........................................................................................27
    Section 5.02    Disbursing Agent ...................................................................................27
    Section 5.03    Record Date for Plan Distributions.........................................................28
    Section 5.04    Means of Cash Payment..........................................................................28
    Section 5.05    Calculation of Distribution Amounts of New Goodrich Equity
Interests .................................................................................................28
    Section 5.06    Fractional Dollars; De Minimis Distributions .........................................28
    Section 5.07    Delivery of Distributions .......................................................................29
    Section 5.08    Expunging of Certain Claims..................................................................30
    Section 5.09    Allocation of Plan Distributions Between Principal and Interest .............30

ARTICLE VI       EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER
AGREEMENTS ...............................................................................................30

    Section 6.01    Assumption/Rejection ............................................................................30
    Section 6.02    Pass-Through .........................................................................................31
    Section 6.03    Assumed Executory Contracts and Unexpired Leases .............................31
    Section 6.04    Oil and Gas Leases.................................................................................31
    Section 6.05    Reservation of Rights.............................................................................32
    Section 6.06    Nonoccurrence of Effective Date............................................................33
    Section 6.07    Cure Provisions......................................................................................33
    Section 6.08    Claims Based on Rejection of Executory Contracts and Unexpired
Leases....................................................................................................34
    Section 6.09    Insurance Policies and Agreements ........................................................34
    Section 6.10    Miscellaneous .......................................................................................34

ARTICLE VII      PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
AND UNLIQUIDATED CLAIMS....................................................................35

    Section 7.01    Objections to Claims..............................................................................35
    Section 7.02    Estimation of Claims..............................................................................35
    Section 7.03    No Distributions Pending Allowance ......................................................36
    Section 7.04    Distributions After Allowance ...............................................................36
    Section 7.05    Prior Payment of Claims ........................................................................36
    Section 7.06    Compliance with Tax Requirements/Allocations .....................................36

ARTICLE VIII     CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN .......................................................37

    Section 8.01    Conditions Precedent to Effective Date...................................................37
    Section 8.02    Substantial Consummation .....................................................................38
    Section 8.03    Waiver of Conditions .............................................................................38
    Section 8.04    Revocation, Withdrawal, or Non-Consummation ....................................38

ARTICLE IX       AMENDMENTS AND MODIFICATIONS .......................................................39

ARTICLE X        RETENTION OF JURISDICTION....................................................................39

    Section 10.01   Retention of Jurisdiction........................................................................39

ii

Section 10.02  No Bankruptcy Court Approval Required ................................................41
ARTICLE XI        COMPROMISES AND SETTLEMENTS ....................................................41
ARTICLE XII       MISCELLANEOUS PROVISIONS.........................................................42
Section 12.01  Bar Dates for Certain Claims .............................................................42
Section 12.02  Payment of Statutory Fees ..................................................................42
Section 12.03  Severability of Plan Provisions ..........................................................43
Section 12.04  Successors and Assigns.......................................................................43
Section 12.05  Discharge of the Debtors ....................................................................43
Section 12.06  Exculpation .........................................................................................43
Section 12.07  Permanent Injunction..........................................................................44
Section 12.08  Releases by the Debtors, Reorganized Debtors, and their Estates............44
Section 12.09  Releases by Holders of Claims and Equity Interests .................................46
Section 12.10  Waiver of Statutory Limitations on Releases ...........................................48
Section 12.11  Indemnification of the D&O Indemnified Parties ....................................48
Section 12.12  Satisfaction of Claims.........................................................................49
Section 12.13  Discharge of Liabilities.......................................................................49
Section 12.14  Integral Part of Plan ...........................................................................50
Section 12.15  Third Party Agreements; Subordination .................................................50
Section 12.16  Binding Effect.....................................................................................50
Section 12.17  Plan Supplement .................................................................................51
Section 12.18  Notices ...............................................................................................51
Section 12.19  Term of Injunctions or Stay ................................................................52
Section 12.20  Setoffs ................................................................................................52
Section 12.21  Recoupment ........................................................................................52
Section 12.22  Release of Liens ..................................................................................52
Section 12.23  Dissolution of any Committees............................................................53
Section 12.24  Protection Against Discriminatory Treatment ..........................................53
Section 12.25  No Admissions ....................................................................................53
Section 12.26  Governing Law ....................................................................................54
Section 12.27  Further Assurances...............................................................................54
Section 12.28  Tax Reporting and Compliance ...........................................................54
Section 12.29  Entire Agreement ................................................................................54
ARTICLE XIII      CONFIRMATION REQUEST...................................................................54

# INTRODUCTION

Goodrich Petroleum Corporation and its subsidiary, Goodrich Petroleum Company, L.L.C., jointly propose the following plan of reorganization under section 1121(a) of the Bankruptcy Code.

Claims against, and Equity Interests in, the Debtors will be treated as set forth herein. Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations, and projections for future operations and risk factors, together with a summary and analysis of the Plan. There are also other agreements and documents, which will be filed with the Bankruptcy Court (as defined below), that are referenced in the Plan or the Disclosure Statement as exhibits and schedules. All such exhibits and schedules are incorporated into and are a part of the Plan as if set forth in full herein.

**ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE ENCOURAGED TO READ THE PLAN, THE DISCLOSURE STATEMENT, AND OTHER ACCOMPANYING DOCUMENTS CAREFULLY AND IN THEIR ENTIRETY. ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN. TO THE EXTENT OF ANY DISCREPANCIES BETWEEN THE PROVISIONS OF THE DISCLOSURE STATEMENT OR THE OTHER RESTRUCTURING DOCUMENTS (AS DEFINED BELOW) AND THE PROVISIONS OF THE PLAN, THE PROVISIONS OF THE PLAN SHALL CONTROL.**

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION OF TERMS

### Section 1.01   Scope of Defined Terms; Rules of Construction

For purposes of the Plan, except as expressly defined elsewhere in the Plan or unless the context otherwise requires, all capitalized terms used but not defined herein shall have the meanings ascribed to them in Section 1.02 of the Plan. Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### Section 1.02   Definitions

(1)     "8.00% Second Lien Notes" means indebtedness issued under the Indenture, dated as of March 12, 2015, for the benefit of holders thereunder, by and among Goodrich, as Issuer, Goodrich Subsidiary as Subsidiary Guarantor, and U.S. Bank, N.A. as Trustee (as amended, supplemented or otherwise modified) in the principal amount of $100 million.

(2)     "8.00% Second Lien Notes Indenture" means that certain Indenture for the 8.00% Second Lien Notes, dated as of March 12, 2015, as amended and supplemented.

(3)     "8.875% Second Lien Notes Indenture" means that certain Indenture for the 8.875% Second Lien Notes, dated as of October 1, 2015, as amended and supplemented.

(4)     "8.875% Second Lien Notes" means indebtedness issued under the Indenture, dated as of October 1, 2015, for the benefit of holders thereunder, by and among Goodrich, as Issuer, Goodrich Subsidiary as Subsidiary Guarantor, and U.S. Bank, N.A. as Trustee (as amended, supplemented or otherwise modified) in the principal amount of $75 million.

(5)     "8.00% Second Lien Noteholders" means the Holders of the 8.00% Second Lien Notes.

(6)     "8.875% Second Lien Noteholders" means the Holders of the 8.875% Second Lien Notes.

(7)     "Administrative Claim(s)" means a Claim(s) against one or more of the Debtors for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through, and including, the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930; and (c) all requests for compensation or expense reimbursement for making a substantial contribution in the Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

(8)     "Administrative Claims Bar Date" means the first Business Day following thirty (30) days after the Effective Date, or such other date as approved by Final Order of the Bankruptcy Court.

(9)     "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

(10)     "Allowed" means, in reference to a Claim or Equity Interest, any Claim or Equity Interest that is not Disputed or Disallowed and: (a) any Claim or Equity Interest or any portion thereof as to which no objection to allowance or request for estimation has been interposed on or before the latter of (i) the Claims Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; (b) any Claim listed on the Schedules as liquidated, non-contingent and undisputed, but only to the amount listed on the Schedules for such Claim; (c) as to which any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order; (d) as to which liability of the Debtors and the amount thereof has been determined by a Final Order; or (e) that is expressly deemed allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim, "Allowed Administrative Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with Section 12.01 of the Plan (if such written request is required), in each case as to which the Debtors or Reorganized Debtors, as applicable, (i) have not interposed a timely objection or (ii) have interposed a timely objection and such objection has been settled, waived through payment, withdrawn, or denied by a Final Order.  An Allowed Claim shall not, for purposes of computing Distributions under the Plan, include interest on such Claim from and

after the Petition Date, except as provided in sections 506(b) or 511 of the Bankruptcy Code or as otherwise expressly set forth in the Plan or a Final Order of the Bankruptcy Court.

(11)　"Amended Governance Documents" means any new or amended charter, certificate of incorporation, certificate of formation, bylaws, or limited liability company agreement (or any other applicable formation or organizational documents) of the Reorganized Debtors to be prepared and filed as provided in Section 4.08 of the Plan.

(12)　"Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other related Claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or applicable non-bankruptcy law.

(13)　"Ballots" means the ballots accompanying the Disclosure Statement.

(14)　"Balloting Agent" means the Person, if any, selected by the Debtors to serve as balloting agent in regard to the Plan.

(15)　"Bankruptcy Code" means title 11 of the United States Code, codified at 11 U.S.C. §§ 101-1532, as in effect on the Petition Date as heretofore or hereafter amended.

(16)　"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division or any other court properly exercising jurisdiction over the Cases.

(17)　"Bankruptcy Restructuring" means the restructuring of the Debtors to be effectuated by the transactions and transfers provided in the Plan.

(18)　"Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Cases or proceedings therein, as the case may be.

(19)　"Bar Date(s)" means the applicable date(s) designated by the Bankruptcy Court (or pursuant to the Local Rules) as the last date for filing proofs of Claims or Equity Interests in the Cases of the respective Debtors.

(20)　"Board of Directors" means the board of directors of Goodrich before the Effective Date.

(21)　"Business Day" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

(22)　"Case(s)" means (a) when used in reference to a particular Debtor or group of Debtors, the chapter 11 case(s) pending for that Debtor or particular group of Debtors, and (b)

when used in reference to all of the Debtors, the above-captioned procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

(23)     "Cash" means the legal currency of the United States of America.

(24)     "Causes of Action" means all actions, including Avoidance Actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other Claims whatsoever, in each case held by the Debtors, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, whether asserted directly or derivatively in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Cases, including through the Effective Date.

(25)     "Claim" means a claim, whether or not asserted or Allowed, as defined in section 101(5) of the Bankruptcy Code.

(26)     "Claimant" means an Entity holding a Claim.

(27)     "Claims Objection Deadline" means the first Business Day which is at least one-hundred eighty (180) days after the Effective Date, or such other date as may be established or extended by the Bankruptcy Court in accordance with Section 7.01(b) of the Plan.

(28)     "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III below pursuant to section 1122(a) of the Bankruptcy Code.

(29)     "Collateral" means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid or unavoidable under the Bankruptcy Code or applicable non-bankruptcy law.

(30)     "Committee" means the official committee of unsecured creditors, if any, appointed pursuant to section 1102(a) of the Bankruptcy Code in the Cases.

(31)     "Confirmation" means the occurrence of the Confirmation Date.

(32)     "Confirmation Date" means the date on which the Confirmation Order is entered on the docket in the Cases within the meaning of Bankruptcy Rules 5003 and 9021.

(33)     "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

(34)     "Confirmation Hearing Date" means the date initially set by the Bankruptcy Court for the Confirmation Hearing.

4

(35)    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(36)    "Consummation" means the occurrence of the Effective Date.

(37)    "Convenience Class" means Holders of general unsecured claims in an allowed amount of less than $10,000.

(38)    "Convertible Notes" means indebtedness issued under:  (i) the Indenture, dated as of December 6, 2006, for the benefit of holders thereunder, by and among Goodrich, as Issuer, Goodrich LLC as Subsidiary Guarantor, and Wells Fargo Bank, N.A. as Trustee (as amended, supplemented or otherwise modified) in the estimated principal amount of $0.4 million; (ii) the Senior Indenture, dated as of September 28, 2009, for the benefit of holders thereunder, by and among Goodrich, as Issuer, Goodrich LLC as Subsidiary Guarantor, and Wells Fargo Bank, N.A. as Trustee (as amended, supplemented or otherwise modified) in the estimated principal amount of $6.7 million; (iii) the Third Supplemental Indenture, dated as of August 26, 2013, for the benefit of holders thereunder, by and among Goodrich, as Issuer, Goodrich LLC as Subsidiary Guarantor, and Wells Fargo Bank, N.A. as Trustee (as amended, supplemented or otherwise modified) in the estimated principal amount of $94.1 million; and (iv) the Indenture, dated as of September 8, 2015, for the benefit of holders thereunder, by and among Goodrich, as Issuer, Goodrich LLC as Subsidiary Guarantor, and Wilmington Trust, N.A. as Trustee (as amended, supplemented or otherwise modified) in the estimated principal amount of $6.1 million.

(39)    "Cure Payment" has the meaning set forth in Section 6.07 of the Plan.

(40)    "D&O Indemnified Parties" means the Debtors' present and former managers, directors, officers and employees, and their respective affiliates, representatives, advisors and agents, each solely in its capacity as such.

(41)    "Debtor" means, individually, Goodrich Petroleum Corporation or Goodrich Petroleum Company, L.L.C., including, where applicable, such entity in its capacity as a debtor in possession in its respective Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

(42)    "Debtors" means Goodrich Petroleum Corporation and its subsidiary Goodrich Petroleum Company, L.L.C., in their capacity as debtors in possession in the Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

(43)    "Disallowed Claim" means a Claim, or any portion thereof, that has been disallowed by a Final Order.

(44)    "Disallowed Equity Interest" means an Equity Interest that has been disallowed by a Final Order.

(45)    "Disbursing Agent" means, as applicable, (a) the applicable Reorganized Debtor, or (b) the Entity or Entities selected by the Debtors, or the Reorganized Debtors, as applicable, to make or facilitate Distributions pursuant to the Plan.

(46)    "Disclosure Statement" means the Solicitation and Disclosure Statement for the Debtors' Proposed Joint Plan of Reorganization dated as of April 11, 2016 as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto.

(47)    "Disputed" means, in reference to a Claim or Equity Interest, any Claim or Equity Interest, or any portion thereof, not Disallowed, not paid pursuant to either the Plan or Final Order of the Bankruptcy Court, and (a) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court, (b) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim or Equity Interest was not timely or properly filed, (c) proof of which was timely and properly filed and which has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, (d) proof of which has been timely and properly filed but such Claim has been designated on the proof of Claim as unliquidated, contingent, or disputed, or in zero or unknown amount and has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; (e) that is disputed in accordance with the provisions of the Plan, or (f) as to which the Debtors, the Disbursing Agent or the Reorganized Debtors, as applicable, have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors, the Disbursing Agent or the Reorganized Debtors, as applicable, in accordance with applicable non-bankruptcy law including any action or proceeding pending in a non-bankruptcy forum, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of determining whether a particular Claim or Equity Interest is a Disputed Claim or Disputed Equity Interest prior to the expiration of any period of limitation fixed for the interposition by the Debtors or Reorganized Debtors, as applicable, of objections to the allowance of Claims or Equity Interests, any Claim or Equity Interest that is not an Allowed Claim or Allowed Equity Interest shall be deemed Disputed.

(48)    "Distribution" means the payment or distribution under the Plan of cash, assets, securities or instruments evidencing an obligation under the Plan or other consideration on property of any nature to any Holder of an Allowed Claim or Allowed Equity Interest.

(49)    "Distribution Date(s)" means the date or dates, occurring as soon as reasonably practicable after the Effective Date, upon which Distributions are made pursuant to the terms of the Plan to Holders of Allowed Administrative Claims, and other Allowed Claims; provided, however, that should such Allowed Administrative Claims or Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

(50)    "Distribution Record Date" means the record date for purposes of making Distributions under the Plan, which shall be the Effective Date.

(51)    "Effective Date" means the first Business Day on which all the conditions to consummation of the Chapter 11 Plan have been satisfied in full or waived as permitted hereunder, and the Chapter 11 Plan becomes effective.

(52)     "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(53)     "Equity Interests" means an (a) ownership interest in a corporation, whether or not transferable or denominated "stock" or similar security; (b) ownership interest of a limited partner in a limited partnership; (c) ownership interest of a general partner in a partnership; (d) ownership interest of a joint venture partner in a joint venture; (e) ownership interest of a member in a limited liability company; (f) ownership interest in an entity not covered by (a) through (e) above; or (g) any warrant, option, or right, contractual or otherwise, to acquire or receive the interests in (a) through (f) above.

(54)     "Estate" means, as to each Debtor, the estate created for such Debtor in its respective Case pursuant to section 541 of the Bankruptcy Code.

(55)     "Exchange Act" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq., as now in effect or hereafter amended, any rules and regulations promulgated thereunder, and any similar federal, state or local law.

(56)     "Face Amount" means (a) when used in reference to a Disputed Claim, the full stated amount claimed by the Holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law (or such lesser estimated amount approved by order of the Bankruptcy Court), and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

(57)     "Final Order" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Bankruptcy Cases (or the docket of such other court), which is and remains in full force and effect, has not been modified, amended, reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, re argument, or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, re argument, or rehearing shall then be pending or (ii) if an appeal, writ of certiorari new trial, re argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re argument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed relating to such order, shall not cause an order not to be a Final Order.

(58)     "General Unsecured Claim" means any Claim that is not Secured or entitled to priority under the Bankruptcy Code or an order of the Court, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code, other than a Senior Notes Claim.

(59)    "<u>Goodrich</u>" means Goodrich Petroleum Corporation.

(60)    "<u>Goodrich Subsidiary</u>" means Goodrich Petroleum Company, L.L.C.

(61)    "<u>Governance Documents</u>" means any charter, certificate of incorporation, certificate of formation, bylaws, limited liability company agreements (or any other formation and organizational documents) of the Debtors in effect as of the Petition Date.

(62)    "<u>Holder(s)</u>" means the beneficial holder(s) of any Claim or Equity Interest.

(63)    "<u>Impaired</u>" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(64)    "<u>Local Rules</u>" means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas, as amended.

(65)    "<u>Lien</u>" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

(66)    "<u>Management Incentive Plan</u>" means that certain post-Effective Date management incentive plan which shall be implemented as set forth in Section 4.05 of the Plan.

(67)    "<u>Majority Second Lien Noteholders</u>" means Holders of at least 50% of the Second Lien Notes Claims.

(68)    "<u>New Goodrich Equity Interests</u>" means the Equity Interests of Reorganized Goodrich to be authorized and issued pursuant to the Plan and as provided in the Amended Governance Documents.

(69)    "<u>Oil and Gas Leases</u>" means any and all unexpired instruments in which any of the Debtors or Reorganized Debtors, as the case may be, hold an existing leasehold, working interest, or similar interest in oil and gas and/or other liquid or gaseous hydrocarbons, including methane, as of the Effective Date, including, without limitation, the leases set forth in the Plan Supplement; Oil and Gas Leases specifically includes oil and gas leases issued by any department, branch, bureau, or division of the United States government in which the Debtors or Reorganized Debtors, as the case may be, hold an existing leasehold, working interest, or similar interest as of the Effective Date.

(70)    "<u>Old Goodrich Equity Interests</u>" means the Equity Interests in Goodrich existing immediately prior to the Effective Date.

(71)    "<u>Other Priority Claims</u>" means a Claim entitled to priority under sections 507(a)(3), (4), (5), (6), (7), and/or (9) of the Bankruptcy Code.

(72)    "Other Secured Claim" means any Secured Claim, including Claims secured by mechanics' and materialmen's or similar liens, against property of any Debtor, but excluding the Senior Revolving Credit Facility Claims and the Second Lien Senior Secured Notes Claims.

(73)    "Person" means an individual, partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agreed or political subdivision thereof) or other entity of any kind.

(74)    "Petition Date" means April 15, 2016, the date on which each of the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

(75)    "Plan" means this joint plan of reorganization, the Plan Supplement and all exhibits and schedules annexed hereto or referenced herein, as may be amended, modified or supplemented from time-to-time.

(76)    "Plan Securities" has the meaning set forth in section 4.16 of the Plan.

(77)    "Plan Securities and Documents" has the meaning set forth in section 4.16 of the Plan.

(78)    "Plan Supplement" means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be filed with the Bankruptcy Court not later than fourteen (14) days prior to the Confirmation Hearing Date or such later date as may be approved by the Bankruptcy Court, as they may be altered, amended, modified or supplemented from time to time, but in all cases in form and substance consistent in all respects with the terms and conditions set forth in the Restructuring Support Agreement or otherwise with such terms and conditions which are acceptable to the Debtors and the Majority Second Lien Noteholders in their respective sole discretion.

(79)    "Prior Liens" means any valid, perfected, and unavoidable Liens of any secured creditor existing on the Petition Date that is senior in priority under applicable law to the Senior Credit Facility.

(80)    "Priority Tax Claim" means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

(81)    "Pro Rata" means when used in reference to a Distribution of property to Holders of Allowed Claims, a proportionate Distribution so that with respect to a particular Allowed Claim in such Class or group of Claims, the ratio of (a) (i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims.

(82)    "Professional" means any professional (a) employed in the Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code or (b) seeking compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

(83)    "<u>Professional Fee Claim</u>" means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

(84)    "<u>Professional Fee Amount</u>" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Section 2.03 herein.

(85)    "<u>Professional Fee Escrow</u>" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

(86)    "<u>Protected Parties</u>" shall mean the Debtors, the Reorganized Debtors, and each of their respected Related Persons.

(87)    "<u>Reinstated</u>" or "<u>Reinstatement</u>" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Equity Interest entitles the Holder thereof so as to leave such Claim or Equity Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

(88)    "<u>Related Persons</u>" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise) and present and former Affiliates and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members), managers, managed accounts or funds, management companies, fund advisors, advisory board members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case serving in such capacity as of the Effective Date, and any Person claiming by or through any of them, including such Related Persons' respective heirs, executors, estates, servants, and nominees; <u>provided</u>, <u>however</u>, that no insurer of any Debtor shall constitute a Related Person.

(89)    "<u>Released Parties</u>" means (a) (i) the lenders under the Senior Credit Facility, (ii) the Senior Credit Facility Agent, and (iii) the Second Lien Noteholders, (b) each of their respective Related Persons, (c) the past and present directors, managers, officers, employees, attorneys, advisors and other representatives of the Debtors and the Reorganized Debtors, in each case, solely in their capacity as such, and (d) the Protected Parties.

(90)    "<u>Reorganized</u>" when used with any specifically named Debtor or group of Debtors means that Debtor or group of Debtors after the Effective Date and each of their respective successors.

(91)    "<u>Reorganized Goodrich Board</u>" means the board of directors of Reorganized Goodrich.

(92)    "<u>Restructuring Documents</u>" means, collectively, the documents and agreements (and the exhibits, schedules, annexes and supplements thereto) necessary to implement, or entered into in connection with, the Plan, including, without limitation, the Disclosure Statement, the Disclosure Statement Order, the Plan, the Plan Supplement, the Amended Governance Documents, the Management Incentive Plan, any documents relating to any additional funding raised in accordance with Section 4.04 of the Plan, and each of the exhibits and schedules to the Plan, which documents and agreements shall in each case contain terms and conditions consistent in all respects with those set forth in the Restructuring Support Agreement or such other terms and conditions that are acceptable to the Debtors and the Majority Second Lien Noteholders in their respective sole discretion.

(93)    "<u>Schedules</u>" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(94)    "<u>Second Lien Notes</u>" means the 8.875% Second Lien Notes together with the 8.00% Second Lien Notes.

(95)    "<u>Second Lien Notes Claims</u>" means any and all Claims held by the Second Lien Noteholders against any Debtor pursuant to the Second Lien Notes Indentures.

(96)    "<u>Second Lien Notes Indentures</u>" means the 8.00% Second Lien Notes Indenture, together with the 8.875% Second Lien Notes Indenture.

(97)    "<u>Second Lien Notes Indentures Trustee</u>" means the indenture trustee under the Second Lien Notes Indentures.

(98)    "<u>Second Lien Noteholders</u>" means the 8.875% Second Lien Noteholders together with the 8.00% Second Lien Noteholders.

(99)    "<u>Restructuring Support Agreement</u>" means the agreement dated March 28, 2016 (as may be amended, supplemented, or otherwise modified from time to time, both as to substance and parties thereto) among the Debtors and the Second Lien Noteholders' party thereto, a copy of which is attached to the Disclosure Statement as Exhibit B.

(100)   "<u>Secured</u>" means, when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

(101)   "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, any rules and regulations promulgated thereunder, or any similar federal, state or local law.

(102)   "Senior Credit Facility" means indebtedness under that certain Second Amended and Restated Credit Agreement, dated as of May 5, 2009 among Goodrich Subsidiary as borrower, Goodrich as parent guarantor, the lenders from time to time a party thereto, and Wells Fargo Bank, National Association, as Administrative Agent, as amended, restated, supplemented, or modified from time to time.

(103)   "Senior Credit Facility Agent" means Wells Fargo Bank, National Association, as Administrative Agent under the Senior Credit Facility.

(104)   "Senior Credit Facility Claims" means any and all Claims held by the Senior Credit Facility against Goodrich Subsidiary, as borrower, and Goodrich, as parent guarantor, arising from, relating to, or pursuant to the terms of the Senior Credit Facility and any related document.

(105)   "Senior Notes" means indebtedness issued under the Indenture, dated as of March 2, 2011, for the benefit of holders thereunder, by and among Goodrich, as Issuer, Goodrich LLC as Subsidiary Guarantor, and U.S. Bank, N.A. as Trustee (as amended, supplemented or otherwise modified) in the estimated principal amount of $116.8 million.

(106)   "Senior Noteholders" means the Holders of the Senior Notes.

(107)   "Setoff Claim" means a Claim of a Holder that has a valid right of setoff with respect to such Claim, which right is enforceable under section 553 of the Bankruptcy Code as determined by a Final Order or as agreed in writing by the Debtors, to the extent subject to such right of setoff.

(108)   "Solicitation" means the solicitation of votes on the Plan through the distribution of Ballots prior to Petition Date in accordance with Section 1125(b) of the Bankruptcy Code.

(109)   "Stamp or Similar Tax" means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any governmental unit.

(110)   "Substantial Contribution Claim" means a claim for compensation or reimbursement of costs and expenses incurred in making a substantial contribution in the Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code.

(111)   "Unimpaired" means a Claim or Equity Interest that is not Impaired.

(112)   "Unsecured Claim" means any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, including any claim

arising from rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

(113)   "Unsecured Notes" means the Senior Notes and the Convertible Notes.

(114)   "Unsecured Notes Claims" means Claims of the Holders of Unsecured Notes.

(115)   "Voting Deadline" means May 6, 2016, the date and time by which votes to accept or reject the Plan must be received by the Balloting Agent.

(116)   "Voting Record Date" means March 17, 2016, the date for the determination of Holders of Claims and Equity Interests entitled to receive the solicitation package and vote to accept or reject the Plan.

**Section 1.03    Rules of Interpretation**

For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (d) the words "herein," "hereto," and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, (f) the word including shall mean, "including, without limitation," and (g) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**Section 1.04    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**Section 1.05    Reference to Monetary Figures**

Unless noted otherwise, all references in the Plan to monetary figures shall refer to the legal currency of the United States of America.

**Section 1.06    Reference to Debtors or Reorganized Debtors**

Unless specifically provided otherwise in the Plan, references to the Debtors or Reorganized Debtors shall mean the Debtors (or a Debtor) and/or Reorganized Debtors (or a Reorganized Debtor), as the context may require.

# ARTICLE II
# UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article III hereof.

## Section 2.01   Administrative Claims

Except as otherwise provided for in the Plan, and subject to the requirements of Section 12.01 of the Plan, each Holder of an Allowed Administrative Claim shall, in full satisfaction, release, settlement, and discharge of such Allowed Administrative Claim:  (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Distribution Date; (b) to the extent such Allowed Administrative Claim is not due and owing on the Effective Date, be paid in full, in Cash, (i) in accordance with the terms of any agreement between the Debtors and such Holder, or when such Claim becomes due and payable under applicable non-bankruptcy law or (ii) in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with the Debtors or Reorganized Debtors.

## Section 2.02   Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall, in full satisfaction, release and discharge thereof, receive (a) such treatment as to which such Holder may agree with the applicable Debtor or Reorganized Debtor, as the case may be, or (b) at the sole option of the applicable Debtor or Reorganized Debtor, as the case may be, (i) payment in full of such Allowed Priority Tax Claim on the Distribution Date or (ii) treatment in accordance with the provisions of sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be.

## Section 2.03   Professional Fee Claims

All final requests for compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code for services rendered to or on behalf of the applicable Debtors or the Committee (if one has been appointed) prior to the Effective Date (other than Substantial Contribution Claims under section 503(b)(4) of the Bankruptcy Code) must be filed and served on the Reorganized Debtors and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors and their counsel and the requesting Professional or other entity no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.  If such a request is granted by the Bankruptcy Court, such Professional Fee Claim shall be paid in full by the Reorganized Debtors, including from the Professional Fee Escrow Account, in such amount as is Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed Professional Fee Claim, or as soon as reasonably practicable thereafter.  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized

14

Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Reorganized Debtors.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional without any further notice to or action, order, or approval of the Bankruptcy Court.

The Reorganized Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date. Professionals shall deliver to the Debtors their estimates for purposes of the Reorganized Debtors computing the Professional Fee Amount no later than five (5) Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. No funds in the Professional Fee Escrow Account shall be property of the Estates. Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Claims have been paid will be turned over to the Reorganized Debtors.

## ARTICLE III
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND EQUITY INTERESTS

### Section 3.01   Introduction

The categories of Claims and Equity Interests set forth below classify Claims and Equity Interests for all purposes, including for purposes of voting, confirmation and Distribution pursuant to the Plan and sections 1122 and 1123(a)(l) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Equity Interest qualifies within the description of such other Classes.  Notwithstanding anything to the contrary in the Plan, a Claim or Equity Interest shall be deemed classified in a Class only to the extent that such Claim or Equity Interest has not been paid, released, Disallowed or otherwise settled prior to the Effective Date.

All Claims (except for Administrative Claims, Priority Tax Claims, and Professional Fee Claims, which are not classified pursuant to section 1123(a)(l) of the Bankruptcy Code) and Equity Interests are classified in Section 3.03 below.

### Section 3.02   Voting; Presumptions

(a)      Acceptance by Impaired Classes.  Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at

least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  An Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

(b)     Voting Presumptions.  Claims and Equity Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.  Claims and Equity Interests in Classes that do not entitle the Holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**Section 3.03    Summary of Classification of Claims**

| Class | Designation | Status | Voting |
|-------|-------------|--------|--------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Senior Credit Facility Claims | Unimpaired | Deemed to Accept |
| 4 | Second Lien Notes Claims | Impaired | Entitled to Vote |
| 5 | Unsecured Notes Claims | Impaired | Deemed to Reject |
| 6 | General Unsecured Claims | Impaired | Deemed to Reject |
| 7 | Convenience Class | Unimpaired | Deemed to Accept |
| 8 | Equity Interests in Goodrich Subsidiary | Unimpaired | Deemed to Accept |
| 9 | Equity Interests in Goodrich | Impaired | Deemed to Reject |

**Section 3.04    Classification and Treatment of Claims and Equity Interests**

(a)     Class 1: Other Priority Claims

(i)     Classification.  Class 1 consists of Other Priority Claims.

(ii)     Treatment.  Except to the extent that a Holder of an Allowed Other Priority Claim agrees in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange

16

for, each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim (other than a priority tax claim or administrative claim) shall receive either: (a) cash equal to the amount of such Allowed Other Priority Claim or (b) such other treatment as may otherwise be agreed to by such Holder, the Debtors, and the Majority Second Lien Noteholders.

(iii)    <u>Voting</u>. Class 1 is Unimpaired by the Plan and Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan and are conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

(b)    <u>Class 2: Other Secured Claims</u>.

(i)    <u>Classification</u>. Class 2 consists of Other Secured Claims.

(ii)    <u>Treatment</u>. Except to the extent that a Holder of an Allowed Other Secured Claim agrees in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Secured Claim, each such Holder shall receive, at the Debtors election and with the consent of the Majority Second Lien Noteholders, either: (a) cash equal to the amount of such Allowed Other Secured Claim, (b) Reinstatement of such Allowed Other Secured Claim, (c) the return or abandonment of the collateral securing such Allowed Other Secured Claim to such Holder, or (d) such other treatment as may otherwise be agreed to by such Holder, the Debtors, and the Majority Second Lien Noteholders.

(iii)    <u>Voting</u>. Class 2 is Unimpaired by the Plan and Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan and are conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

(c)    <u>Class 3: Senior Credit Facility Claims</u>.

(i)    <u>Classification</u>. Class 3 consists of Senior Credit Facility Claims.

(ii)    <u>Treatment</u>. On the Effective Date, the Senior Credit Facility Claims shall be deemed Allowed Claims, shall not be subject to any avoidance, reduction, setoff, offset, recharacterization, subordination, counterclaim, cross-claim, defense, disallowance, impairment, objection, or challenges under any applicable law or regulation by any Person. On the Effective Date, the Senior Credit Facility Claims will have such treatment as is mutually agreed to by the Debtors, the Holders of Senior Credit Facility Claims, and the Majority Second Lien Noteholders that shall be set forth in the Plan Supplement.

        (iii)    <u>Voting</u>.  Class 3 is Unimpaired by the Plan and Holders of Allowed Senior Credit Facility Claims are not entitled to vote to accept or reject the Plan and are conclusively deemed to have accepted the Plan.

(d)    <u>Class 4: Second Lien Notes Claims</u>.

        (i)    <u>Classification</u>.  Class 4 consists of Second Lien Notes Claims.

        (ii)    <u>Treatment</u>.  The Second Lien Notes Claims shall be deemed allowed in the aggregate amount of $175 million of principal plus accrued and unpaid interest through the Petition Date.  Except to the extent a Holder of a Second Lien Note Claim agrees in writing to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Second Lien Notes Claim, each Holder of a Second Lien Notes Claims shall receive their Pro Rata share of 100% of the New Goodrich Equity Interests, subject to dilution on account of the Management Incentive Plan.

        (iii)    <u>Voting</u>.  Class 4 is Impaired by the Plan and Holders of Second Lien Notes Claims are entitled to vote to accept or reject the Plan.

(e)    <u>Class 5: Unsecured Notes Claims</u>.

        (i)    <u>Classification</u>.  Class 5 consists of Unsecured Notes Claims.

        (ii)    <u>Treatment</u>.  On the Effective Date, the Unsecured Notes Claims shall be cancelled and extinguished without further notice to, approval of, or action by any Entity, and each Holder of an Unsecured Notes Claim shall not receive any Distribution or retain any property on account of such Unsecured Notes Claim.

        (iii)    <u>Voting</u>.  Class 5 is Impaired by the Plan and Holders of Allowed Unsecured Notes Claims are not entitled to vote to accept or reject the Plan and are conclusively deemed to have rejected the Plan under section 1126(f) of the Bankruptcy Code.

(f)    <u>Class 6: General Unsecured Claims</u>.

        (i)    <u>Classification</u>.  Class 6 consists of General Unsecured Claims.

        (ii)    <u>Treatment</u>.  Holders of General Unsecured Claims shall not receive a distribution under the Plan.

        (iii)    <u>Voting</u>.  Class 6 is Impaired by the Plan and Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject the Plan and are conclusively deemed to have rejected the Plan under section 1126(f) of the Bankruptcy Code.

(g)    <u>Class 7: Convenience Class Claims</u>.

     (i)    <u>Classification</u>.  Class 7 consists of Convenience Class Claims.

     (ii)    <u>Treatment</u>.  Holders of general unsecured claims in an allowed amount of less than $10,000 shall receive either:  (a) cash equal to the full allowed amount of such Holder's claim or (b) such lesser treatment as may otherwise be agreed to by such Holder, the Debtors, and the Majority Second Lien Noteholders.

     (iii)    <u>Voting</u>. Class 7 is Unimpaired by the Plan and Holders of Allowed Convenience Class Claims are not entitled to vote to accept or reject the Plan and are conclusively deemed to have accepted the Plan.

(h)    <u>Class 8: Equity Interests in Goodrich Subsidiary</u>

     (i)    <u>Classification</u>.  Class 8 consists of Equity Interests in Goodrich Subsidiary.

     (ii)    <u>Treatment</u>.  Equity Interests in Goodrich Subsidiary shall be Reinstated and shall vest in Goodrich as a Reorganized Debtor.

     (iii)    <u>Voting</u>.  Class 8 is Unimpaired by the Plan and Holders of Equity Interests in Goodrich Subsidiary are not entitled to vote to accept or reject the Plan and are conclusively deemed to have accepted the Plan.

(i)    <u>Class 9: Equity Interests in Goodrich</u>.

     (i)    <u>Classification</u>.  Class 9 consists of Equity Interests in Goodrich.

     (ii)    <u>Treatment</u>.  On the Effective Date, Equity Interests in Goodrich shall be cancelled and extinguished without further notice to, approval of, or action by any Entity, and each Holder of an Equity Interest in Goodrich shall not receive any Distribution or retain any property on account of such Equity Interest in Goodrich.

     (iii)    <u>Voting</u>.  Class 9 is Impaired by the Plan and Holders of Equity Interests in Goodrich are not entitled to vote to accept or reject the Plan and are conclusively deemed to have rejected the Plan.

**Section 3.05   Special Provision Regarding Unimpaired Claims**

Except as otherwise provided in the Plan, nothing shall affect the Debtors' or Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to Setoff Claims or recoupments against Unimpaired Claims.  Notwithstanding anything to the contrary contained in the Plan, unless paid in full in cash in accordance with the terms of the Plan or otherwise agreed to by the Holders of Senior Credit Facility Claims, the

Holders of Senior Credit Facility Claims rights and defenses (other than as a direct result of the filing of the chapter 11 cases), both legal and equitable, with respect to any Claims against the Debtor or Reorganized Debtor, including but not limited to all rights with respect to legal and equitable defenses to Setoff or recoupments against any Debtor or Reorganized Debtor are preserved.

**Section 3.06   Cram Down**

If any Class of Claims or Equity Interests entitled to vote on the Plan does not vote to accept the Plan, the Debtors shall (a) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with Article IX of the Plan. With respect to any Class of Claims or Equity Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm or "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**Section 3.07   Elimination of Vacant Classes**

Any Class of Claims that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**Section 3.08   Votes Solicited in Good Faith**

The Debtors have, and upon the Confirmation Date the Reorganized Debtors shall be deemed to have, solicited votes on the Plan from the voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the Solicitation. Accordingly, the Debtors, the Reorganized Debtors and each of their respective Related Persons shall be entitled to, and upon the Confirmation Date are hereby granted, the protections of section 1125(e) of the Bankruptcy Code.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 4.01   General Settlement of Claims and Equity Interests**

As provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. Subject to Article V hereof, all Distributions made to Holders of Allowed Claims and Allowed Equity Interests in any Class are intended to be and shall be final.

**Section 4.02    Voting of Claims**

Each Holder of an Allowed Claim as of the Voting Deadline in an Impaired Class of Claims that is not (a) deemed to have rejected the Plan or (b) conclusively presumed to have accepted the Plan, and that held such Claim as of the Voting Record Date, shall be entitled to vote to accept or reject the Plan. The instructions for completion of the Ballots are set forth in the instructions accompanying each Ballot.

**Section 4.03    Issuance of New Goodrich Equity Interests**

Subject to and in accordance with the Amended Governance Documents, the issuance of the New Goodrich Equity Interests by Reorganized Goodrich is authorized without the need for any further corporate action or any further action by the Holders of Claims or Equity Interests. All of the shares of New Goodrich Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and nonassessable, and shall be subject to the terms and conditions of the Amended Governance Documents.  Each Distribution and issuance referred to in Article V hereof shall be governed by the terms and conditions set forth in the Plan applicable to such Distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such Distribution or issuance, which terms and conditions shall bind each Entity receiving such Distribution or issuance.  On or before the Distribution Date, Reorganized Goodrich shall issue the New Goodrich Equity Interests for Distribution pursuant to the provisions hereof. All securities to be issued shall be deemed issued as of the Effective Date regardless of the date on which they are actually distributed.

**Section 4.04    Additional Funding**

In connection with potential treatment of the Senior Credit Facility Claims, the Debtors may incur additional financing and/or issue debt or equity securities to pay down all or a portion of the Senior Credit Facility Claims.  The terms of such financing and/or debt or equity securities will be set forth in the Plan Supplement, and such potential financing and/or debt or equity securities to be issued may be effectuated under this Plan.

**Section 4.05    Material Terms of the Management Incentive Plan**

Prior to the Restructuring, the Debtors and the Majority Second Lien Noteholders shall negotiate a proposed long-term management incentive plan for Reorganized Goodrich, that provides for salaries, incentive bonuses, and long-term equity-linked compensation.  Initially, such management incentive plan shall provide for grants of New Goodrich Equity Interests, in an aggregate amount equal to 9% of the total New Goodrich Equity Interests.  5% of the New Goodrich Equity Interests shall be granted upfront and shall be unrestricted, and the remaining 4% of the New Goodrich Equity Interests shall be granted upfront but vest over a three year period, with one-third vesting each year, and be restricted.  The additional terms of such on-going, long term equity-based awards shall be approved by the Reorganized Goodrich Board. All existing severance agreements and severance plans shall be assumed by Reorganized Goodrich; provided that such severance agreements and severance plans shall be amended (i) such that the transactions contemplated by the Plan shall not constitute a change of control under any such severance agreements or severance plans and shall not otherwise trigger any payments under

21

such agreements and plans, (ii) such that a sale by any owner of New Goodrich Equity Interests in a transaction after the Effective Date where there is not an actual severance of an officer or employee covered by such severance agreement or severance plan does not constitute a change of control under any such severance agreements or severance plans and shall not otherwise trigger any payments under such agreements and plans, and (iii) to contain such other amendments as may be acceptable to the Debtors and the Majority Second Lien Noteholders; provided that no such amendments shall be inconsistent with this Plan.

**Section 4.06   Bankruptcy Restructuring**

On the Effective Date, and pursuant to the Plan or the applicable Restructuring Documents, the applicable Debtors or Reorganized Debtors shall enter into the Bankruptcy Restructuring contemplated by the Plan, and shall take any actions as may be reasonably necessary or appropriate to effect a restructuring of their respective liabilities and Equity Interests.  The actions to effect the Bankruptcy Restructuring may include: (a) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation or reincorporation, or formation pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be reasonably necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the Bankruptcy Restructuring. The chairman of the board of directors, president, chief executive officer, chief financial officer, or any other appropriate officer, manager, or managing partner of each Debtor or Reorganized Debtor, as appropriate, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be reasonably necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan. The secretary or assistant secretary of the appropriate Debtor or Reorganized Debtor, as appropriate, shall be authorized to certify or attest to any of the foregoing actions.  All actions taken, or caused to be taken, to effect the Bankruptcy Restructuring shall be deemed to have been authorized and approved by the Bankruptcy Court.

**Section 4.07   Continued Corporate Existence**

Except as otherwise provided in the Plan, following the Effective Date, the Reorganized Debtors shall continue to exist as separate corporations or limited liability companies, as the case may be, in accordance with applicable non-bankruptcy law and pursuant to their Governance Documents in effect prior to the Effective Date, except to the extent that such Governance Documents are amended by the terms of the Plan or the Amended Governance Documents. After the Effective Date, subject to the terms and conditions of the applicable Restructuring Documents, the Reorganized Debtors will be free to act in accordance with applicable governance laws, including, without limitation, laws regarding sale of assets, mergers, dissolution, and name changes.  Notwithstanding anything to the contrary herein, the Claims of a particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or

Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor solely by virtue of the Plan or the Cases.

**Section 4.08   Amended Governance Documents**

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall file applicable Amended Governance Documents, in form and substance acceptable to the Debtors and the Majority Second Lien Noteholders, in each of their respective sole discretion, in their applicable jurisdiction of formation or incorporation that such Reorganized Debtor deems necessary or appropriate to carry out the provisions of the Plan.  The Amended Governance Documents (a) shall prohibit the issuance of nonvoting equity securities to the extent required by section 1123 of the Bankruptcy Code, and (b) after the Effective Date, shall be subject to further amendment as provided in such Amended Governance Documents or as otherwise permitted by applicable law. The initial directors to serve on the Reorganized Goodrich Board on the Effective Date shall be disclosed in the Plan Supplement.

The Reorganized Goodrich Board shall initially have (A) seven (7) members, with appointment to include the following: (i) Walter G. Goodrich, the Chief Executive Officer of Goodrich, (ii) Robert C. Turnham, Jr., the President of Goodrich, and (iii) any member of the Board of Directors, other than the Chief Executive Officer and President, who is interviewed and approved by the Holders of the New Goodrich Equity Interests, and (B) up to four (4) additional members to be appointed by the Holders of the New Goodrich Equity Interests in accordance with the Amended Governance Documents.

**Section 4.09   Cancellation of Notes, Certificates, and Instruments**

Unless otherwise provided for herein, on the Effective Date, all promissory notes, stock, instruments, indentures, bonds, agreements, certificates or other documents evidencing, giving rise to, or governing any Second Lien Notes and Unsecured Notes Claims against the Debtors and the Equity Interests in Goodrich shall be deemed cancelled and shall represent only the right, if any, to participate in the Distributions contemplated by the Plan.  The obligations of the Debtors thereunder or in any away related thereto shall be fully released, terminated, extinguished and discharged and, with respect to the Equity Interests in Goodrich, retired and thereafter cease to exist, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  Notwithstanding the foregoing and anything else contained in the Plan, the Second Lien Notes shall continue in effect solely for the purposes of (a) allowing Distributions to be made under the Plan pursuant to the Second Lien Notes Indentures and for the Second Lien Notes Indentures Trustee to perform such other necessary functions with respect thereto with the benefit of all the protections and other provisions of the Second Lien Notes in doing so, and (b) permitting the Second Lien Noteholders to maintain or assert any right or charging lien it may have with respect to Distributions pursuant to the terms of the Plan for its fees and expenses (including fees and expenses of counsel or other agents).

**Section 4.10    Revesting of Assets**

Except as otherwise provided in the Plan or in the Confirmation Order, as of the Effective Date, all property of the Debtors, including any assets or property acquired by the Debtors or the Reorganized Debtors during the Cases or under or in connection with the Plan, shall vest or revest in the applicable Reorganized Debtor free and clear of all Claims, Liens, encumbrances, and other Equity Interests other than the Claims, Liens, encumbrances arising under the Senior Credit Facility if the Senior Credit Facility Claims are not otherwise paid in full in cash in accordance with the terms of the Plan, except as otherwise agreed to by the Senior Credit Facility Agent.  From and after the Effective Date, the Reorganized Debtors may operate (or liquidate and wind up) their businesses and use, acquire, and dispose of property and settle and compromise claims or interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the generality of the foregoing, the Reorganized Debtors may, without application to or approval by the Bankruptcy Court or any other Person or party, pay professional fees and expenses that they incur after the Effective Date.

**Section 4.11    Preservation of Rights of Action; Settlement**

Except to the extent such rights, claims, Causes of Action, defenses, and counterclaims are otherwise dealt with in the Plan or are expressly and specifically released in connection with the Plan, the Confirmation Order, or in any settlement agreement approved during the Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors and Reorganized Debtors hereby reserve any and all rights, claims, Causes of Action, defenses, and counterclaims of or accruing to the Debtors whether or not litigation relating thereto is pending on the Effective Date.  Avoidance Actions shall revest in the Reorganized Debtors and shall not be released upon the Effective Date.  The Reorganized Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any or all of such rights, claims, Causes of Action, defenses, and counterclaims and to decline to do any of the foregoing without further notice to or action, order or approval of the Bankruptcy Court.

**Section 4.12    Employee and Retiree Benefits**

Except as provided in Section 4.05 of the Plan, on and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors will: (a) honor, in the ordinary course of business, any unrejected contracts, agreements, policies, programs, and plans for, among other things, compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time, and any other Benefit Plan; and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date; provided, however, that the Debtors' or Reorganized Debtors' performance of any employment agreement will not entitle any person to any benefit or

24

alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan.  Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, any Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all "retiree benefits" (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

**Section 4.13   Workers' Compensation Programs**

On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors shall continue to honor their post-petition obligations under: (a) all applicable workers' compensation or similar laws in the states or countries in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, policies, programs and plans for workers' compensation and workers' compensation insurance currently in effect.  Nothing in the Plan shall limit, diminish or otherwise alter the Debtors' or Reorganized Debtors' defenses, claims, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs and plans; provided, however, that nothing herein shall be deemed to impose any obligations on the Debtors or Reorganized Debtors in addition to what is required under the provisions of applicable law.

**Section 4.14   Exemption From Certain Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan or the Restructuring Documents shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the Distributions to be made under the Plan or the Restructuring Documents, (ii) the issuance and Distribution of the New Goodrich Equity Interests, and (iii) the maintenance or creation of security interests or any Lien as contemplated by the Plan or the Restructuring Documents.

**Section 4.15   Surrender of the Second Lien Notes**

As a condition to receiving any Distribution under the Plan, each Second Lien Noteholder shall surrender or contribute its Second Lien Notes to the applicable Debtor or its designee.  Any Holder of a Second Lien Notes Claim that fails to (a) surrender or contribute its Second Lien Notes or (b) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to any applicable Debtor before the second anniversary of the Effective Date, shall be deemed to

25

have forfeited all rights and claims with respect thereto, may not participate in any Distribution under the Plan on account thereof, and all New Goodrich Equity Interests owing with respect to such Second Lien Notes Claim shall be retained by any applicable Debtor.

**Section 4.16   Section 1145 Exemption**

On and after the Effective Date, each of the Debtors and the Reorganized Debtors is authorized to and shall provide, distribute or issue, as applicable, the New Goodrich Equity Interests and, if applicable, any securities to be issued under Section 4.04 hereof (collectively, the "**Plan Securities**") and any and all other instruments, certificates, and other documents or agreements required to be provided, distributed, issued, executed or delivered pursuant to or in connection with the Plan (collectively, the "**Plan Securities and Documents**"), in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  The issuance of the Plan Securities and the Distribution thereof under the Plan shall be exempt from registration under applicable securities laws (including Section 5 of the Securities Act or any similar state law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145(a) of the Bankruptcy Code, Section 4(a)(2) of the Securities Act and/or other applicable exemptions.  The Plan Securities may not be transferred, encumbered, or otherwise disposed of in the absence of such registration or an exemption therefrom under the Securities Act or under such laws and regulations thereunder.  Accordingly, the Plan Securities may be subject to restrictions on transfer as set forth in the governing documents to such Plan Securities.

Without limiting the effect of section 1145 of the Bankruptcy Code, all documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity (other than as expressly required by such applicable agreement).

Reorganized Goodrich shall register the New Goodrich Equity Interests under the Securities Act or Exchange Act or to list the New Goodrich Equity Interests for public trading on any securities exchange or be a reporting issuer.  Distribution of the New Goodrich Equity Interests shall be made by delivery or book-entry transfer thereof as determined by Reorganized Goodrich.

**Section 4.17   Authority**

All actions and transactions contemplated under the Plan, including, but not limited to, the execution of the Amended Governance Documents, are and shall be authorized upon Confirmation of the Plan, in each case without further notice to or order of the Bankruptcy Court, and without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, shareholders and/or members (except for those expressly required pursuant hereto or by the Restructuring Documents).  Specifically, all amendments to the charters, certificates of incorporation or formation, the articles of incorporation or organization, the operating

agreements, the limited liability company agreements, and/or bylaws of any of the Debtors and all other corporate action on behalf of any of the Debtors or the Reorganized Debtors as may be necessary to put into effect or carry out the terms and intent of the Plan may be effected, exercised, and taken, in each case without further notice to or order of the Bankruptcy Court and without further action by the Debtors' directors, officers, managers, shareholders and/or members with like effect as if effected, exercised, and taken by unanimous action of the directors, officers, managers, shareholders and/or members of the Debtors or the Reorganized Debtors (as applicable).  The Confirmation Order shall include provisions dispensing with the need of further approvals, notices or meetings of the Debtors or holders of Equity Interests and authorizing and directing any director, officer, manager, or member of each respective Debtor to execute any document, certificate or agreement necessary to effectuate the Plan on behalf of such Debtor, which documents, certificates, and agreements shall be binding on the Debtors, the Creditors, and all Holders of Equity Interests.

**Section 4.18   Continuing Effectiveness of Final Orders**

Payment authorization granted to the Debtors under any prior Final Order entered by the Bankruptcy Court shall continue in effect after the Effective Date.  Accordingly, the Debtors or the Reorganized Debtors may pay or otherwise satisfy any Claim to the extent permitted by, and subject to, the applicable Final Order without regard to the treatment that would otherwise be applicable to such Claim under the Plan.

**ARTICLE V**
**PROVISIONS REGARDING DISTRIBUTIONS**

**Section 5.01   Distributions for Claims and Equity Interests Allowed as of the Effective Date**

Except as otherwise provided herein, as ordered by the Bankruptcy Court, or as otherwise agreed to by the Debtors or the Reorganized Debtors (as applicable) and the Holder of the applicable Claim or interest, each Holder of an Allowed Claim or Allowed Equity Interest shall receive on the Distribution Date the full amount of the Distributions that the Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class. All Cash Distributions shall be made by the Disbursing Agent from available Cash of the Reorganized Debtors. Any Distribution hereunder of property other than Cash shall be made by the Disbursing Agent in accordance with the terms of the Plan.  Except as provided in the Plan, the Confirmation Order or a Final Order of the Bankruptcy Court, or as required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Equity Interest and no Holder of an Allowed Claim or Allowed Equity Interest shall be entitled to post-petition interest on account of such Allowed Claim or Allowed Equity Interest.

**Section 5.02   Disbursing Agent**

The Disbursing Agent shall make all Distributions required under the Plan, except with respect to a Holder of a Claim whose Distribution is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, which Distributions shall be delivered to the appropriate indenture trustee, agent, or servicer in accordance with provisions of the Plan and the terms of the relevant indenture or other governing agreement for

further Distributions to Holders of Claims represented by such indenture trustee, agent, or servicer. Distributions made to such indenture trustee, agent, or servicer, as the case may be, shall constitute Distributions pursuant to the Plan to Holders of Allowed Claims represented by such indenture trustee, agent, or servicer, as case may be, regardless of whether such indenture trustee, agent, or servicer, make such Distributions to such Holders.  If the Disbursing Agent is an independent third party designated by the Reorganized Debtors to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for Distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms reasonably acceptable to the Reorganized Debtors.   No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Reorganized Debtors.

## Section 5.03   Record Date for Plan Distributions

As of the close of business on the Distribution Record Date, the registers for Claims and Equity Interests shall be closed and there shall be no further changes in the Holder of record of any Claim or Equity Interest.  The Reorganized Debtors, or the Disbursing Agent, as applicable, shall have no obligation to recognize any transfer of Claim or Equity Interest occurring after the Distribution Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those Holders of record stated on the registers of Claims and/or Equity Interests as of the close of business on the Distribution Record Date for Distributions under the Plan.

## Section 5.04   Means of Cash Payment

Cash payments hereunder shall be in U.S. funds by check, wire transfer, or such other commercially reasonable manner as the payor shall determine in its sole discretion.

## Section 5.05   Calculation of Distribution Amounts of New Goodrich Equity Interests

No fractional shares of New Goodrich Equity Interests shall be issued or distributed hereunder by Reorganized Goodrich or any Disbursing Agent, indenture trustee, agent, or servicer. Each Person entitled to receive New Goodrich Equity Interests shall receive the total number of whole shares of New Goodrich Equity Interests to which such Person is entitled. Whenever any Distribution to a particular Person would otherwise call for Distribution of a fraction of a share of New Goodrich Equity Interests, such number of shares to be distributed shall be rounded down to the nearest whole number and such Person shall receive no separate consideration for such fractional shares.

## Section 5.06   Fractional Dollars; De Minimis Distributions

Any other provision of the Plan notwithstanding, payments of fractions of (a) dollars or (b) an applicable currency shall not be made.  Whenever any payment of a fraction of (i) a dollar or (ii) an applicable currency under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar or unit of such

28

applicable currency (up or down), with half dollars or half units of an applicable foreign currency being rounded down. The Disbursing Agent or the Reorganized Debtors (or any indenture trustee, agent, or servicer), as the case may be, shall not make any payment of less than twenty-five dollars ($25.00), or its equivalent in an applicable foreign currency, with respect to any Claim unless a request therefore is made in writing to such Disbursing Agent or the Reorganized Debtors (or any indenture trustee, agent, or servicer), as the case may be.

**Section 5.07   Delivery of Distributions**

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims and Allowed Equity Interests shall be made by the Disbursing Agent or the Reorganized Debtors, as the case may be, (a) at the addresses set forth on the proofs of Claim or Equity Interest filed by such Holders (or at the last known addresses of such Holders if no proof of Claim or Equity Interest is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent or the Reorganized Debtors, as the case may be, after the date of any related proof of Claim or Equity Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Equity Interest has been filed and the Disbursing Agent or the Reorganized Debtors, as the case may be, has not received a written notice of a change of address, (d) in the case of the Holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer, or (e) at the addresses set forth in a properly completed letter of transmittal accompanying securities, if any, properly remitted to the Reorganized Debtors. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Disbursing Agent or the Reorganized Debtors (or the appropriate indenture trustee, agent, or servicer), as the case may be, is notified of such Holder's then current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made through the Disbursing Agent or the Reorganized Debtors (or the indenture trustee, agent, or servicer), as the case may be, shall be returned to the Person issuing such Distribution until such Distributions are claimed. All Claims for undeliverable Distributions must be made on or before ninety (90) days after the Effective Date, after which date all unclaimed property shall revert to the Reorganized Debtors, free of any restrictions thereon except as provided elsewhere in the Plan and the Claim of any Holder or successor to such Holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

Checks issued by the Disbursing Agent or the Reorganized Debtors, as the case may be, on account of Allowed Claims or Allowed Equity Interests shall be null and void if not negotiated within ninety (90) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim or Allowed Equity Interest with respect to which such check originally was issued. Any Holder of an Allowed Claim or Allowed Equity Interest holding an un-negotiated check that does not request reissuance of such un-negotiated check within ninety (90) days after the date of mailing or other delivery of such check shall have its Claim, Equity Interest or other rights for such un-negotiated check discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. In such case, any Cash held for payment on account of such Claims

or Equity Interests shall revert to the Reorganized Debtors, free and clear of any restrictions thereon except as provided elsewhere in the Plan.

**Section 5.08   Expunging of Certain Claims**

All Claims marked or otherwise designated as "contingent, unliquidated or disputed" on the Debtors' Schedules and for which no proof of claim has been timely filed, shall be deemed disallowed and such Claim may be expunged without the necessity of filing a claim objection and without any further notice to, or action, order or approval of the Bankruptcy Court.

**Section 5.09   Allocation of Plan Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, to the extent permitted by applicable law, be allocated for income tax purposes to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

## ARTICLE VI
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

**Section 6.01   Assumption/Rejection**

On the Effective Date, all of the Debtors' executory contracts and unexpired leases, including, but not limited to, those contracts and leases listed on Schedule 6.01(a) of the Plan Supplement, will be assumed by the Reorganized Debtors unless such executory contract or unexpired lease: (a) is being rejected pursuant to the Plan by being identified on the Plan Supplement or any other materials filed with the Bankruptcy Court as an executory contract or unexpired lease being rejected pursuant to the Plan, which shall include any material contracts identified for rejection by the Majority Second Lien Noteholders; (b) is the subject of a motion to reject filed on or before the Effective Date; or (c) has been previously assumed or rejected by the Debtors.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any executory contract or unexpired lease, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

To the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Case, (ii) any Debtor's or any Reorganized Debtor's assumption of such executory contract or unexpired lease or (iii) the Confirmation or Consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to modify or terminate such executory contract or unexpired lease or to exercise any other default-related rights or remedies with respect thereto, and any

30

required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

Each executory contract and unexpired lease assumed pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms and conditions, except as modified by the provisions of the Plan, any order of the Bankruptcy Court approving its assumption, or applicable law.

## Section 6.02   Pass-Through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the operation of the Reorganized Debtors' business but not otherwise addressed as a Claim or Equity Interest or assumed under Section 6.03 of the Plan, including non-exclusive or exclusive patent, trademark, copyright, maskwork, or other intellectual property licenses, and other executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment under the Plan or Confirmation Order, be passed through the Cases for the benefit of the Reorganized Debtors.

## Section 6.03   Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, and (b) all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel, or bridge agreements or franchises, and any other equity interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during the Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any claims that may arise in connection therewith.

## Section 6.04   Oil and Gas Leases

To the extent any of the Reorganizing Debtors' Oil and Gas Leases constitute executory contracts or unexpired leases of real property under section 365 of the Bankruptcy Code, such Oil and Gas Leases will be assumed by the applicable Reorganized Debtor.  To the extent any of the Reorganizing Debtor's Oil and Gas Leases constitute contracts or other property rights not assumable under section 365 of the Bankruptcy Code, except as provided in the Plan or Confirmation Order, such Oil and Gas Leases shall pass through the Cases for the benefit of the Reorganized Debtors and the counterparties to such Oil and Gas Leases.

Except for the defaults of a kind specified in sections 365(b)(2) and 541(c)(1) of the Bankruptcy Code (which defaults the applicable Debtor or Reorganized Debtor will not be

required to cure), or as otherwise provided herein, the legal, equitable and contractual rights of the counterparties to such Oil and Gas Leases shall be unaltered by the Plan; provided, however, that to the extent a failure by the Reorganizing Debtor to pay or perform an obligation under such Oil and Gas Lease (whether or not such Oil and Gas Lease is subject to the provisions of section 365 of the Bankruptcy Code) is a default under any applicable Oil and Gas Lease, such default shall be cured for all purposes by the payments provided for herein or the Reorganized Debtor's subsequent performance of such obligation with such applicable Oil and Gas Lease otherwise remaining in full force and effect for the benefit of the applicable Reorganized Debtor. To the extent such payment is due and owing on the Effective Date, such payment shall be made, in Cash, on the Distribution Date, or upon such other terms as may be agreed to by the Disbursing Agent or the Reorganized Debtor, as the case may be.  To the extent such payment is not due and owing on the Effective Date, such payment (a) will be made, in Cash, in accordance with the terms of any agreement between the parties, or as such payment becomes due and owing under (i) applicable non-bankruptcy law, or (ii) in the ordinary course of business of the Reorganized Debtor or (b) will be made upon other terms as may be agreed upon by the Disbursing Agent or the Reorganized Debtor, as the case may be, and the Person to whom such payment is due.  To the extent it is impossible for the Reorganized Debtor to cure a default arising from any failure to perform a non-monetary obligation, such default shall be cured by performance by the applicable Reorganized Debtor at or after the time of assumption in accordance with the terms of the applicable Oil and Gas Lease with the applicable Oil and Gas Lease remaining in effect for the benefit of the applicable Reorganized Debtor.  If there is a dispute as to any cure obligation (including cure payments) between the applicable Reorganized Debtor and the Lessor of an Oil and Gas Lease, the applicable Reorganized Debtor shall only have to pay or perform as herein provided the non-disputed cure obligation with the balance of the cure payment or cure performance to be made or performed after resolution of such dispute either by (a) agreement of the parties or (b) resolution by the Bankruptcy Court under a Final Order.

**Section 6.05   Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an executory contract or unexpired lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.  The deemed assumption provided for in Section 6.01 of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Reorganized Debtors following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

Additionally, notwithstanding anything contained herein to the contrary, if there is a dispute as to Cure Payments (as defined below), adequate assurances of future performance or any other matter related to any executory contract or unexpired lease, the Debtors or Reorganized Debtors, as the case may be, may, in their sole and absolute discretion, determine to reject any executory contract or unexpired lease at any time prior to thirty (30) days after the entry of a Final Order resolving such dispute.  The effective date of any rejection effected

pursuant to the preceding sentence shall be the Effective Date regardless of when the Debtors or Reorganized Debtors send notice of such rejection.

## Section 6.06   Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## Section 6.07   Cure Provisions

Except as otherwise provided under the Plan, with respect to any monetary amounts that must be cured as a requirement for assumption by any Reorganized Debtor, such cure (the "Cure Payment") shall be effected or otherwise satisfied by prompt payment of such monetary amount as contemplated by section 365(b)(1)(A) of the Bankruptcy Code or as otherwise agreed to by the parties.  The Plan Supplement will set forth the Cure Payment for each executory contract and unexpired lease to be assumed by the Debtors.  If the non-Debtor party to the executory contract or unexpired lease objects to the Cure Payment scheduled by the Reorganizing Debtors for such executory contract or unexpired lease, such executory contract or unexpired lease non-Debtor party must file an objection with the Bankruptcy Court to such Cure Payment on or before five (5) days prior to the Confirmation Hearing Date; failure to timely file such objection shall be deemed acceptance by such non-Debtor party of the Cure Payment for all purposes.  If there is a dispute regarding (a) the timing of any Cure Payment required in order to meet the promptness requirement of section 365(b)(1) of the Bankruptcy Code, (b) the nature, extent or amount of any Cure Payment, (c) the Reorganizing Debtors' ability or the ability of the Reorganizing Debtors' assignees to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (d) any other matter pertaining to assumption, subject to the provisions of Section 6.05, the Cure Payment will be made following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

To the extent it is impossible for a Reorganized Debtor to cure a default arising from any failure to perform a non-monetary obligation, such default shall be cured by performance by the applicable Reorganized Debtor at or after assumption in accordance with the terms of the applicable unexpired lease or executory contract with the applicable executory contract or unexpired lease remaining in effect for the benefit of the applicable Reorganized Debtor.  Any non-Debtor party to an executory contract or unexpired lease objecting to such cure of non-monetary obligations must file an objection to such cure with the Bankruptcy Court on or before the date that is five (5) days prior to the Confirmation Hearing Date; failure to timely file such objection shall be deemed acceptance by such non-Debtor party of the cure of non-monetary defaults for all purposes.

Subject to any cure claims filed with respect thereto, assumption of any executory contract or unexpired lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at the time prior to the

effective date of assumption, in each case as provided in section 365 of the Bankruptcy Code. Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

**Section 6.08    Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Any Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the applicable provisions of the Plan for such Debtor; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article XII hereof.  To the extent applicable, the limitations imposed by section 502 of the Bankruptcy Code shall apply to the relevant rejection Claim, including, without limitation, subsection 502(b)(6) and subsection 502(b)(7) thereof.

**Section 6.09    Insurance Policies and Agreements**

The insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date shall continue in full force and effect after the Effective Date.  To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything to the contrary in the Plan, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor and its Estate.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreements.  If the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Debtors reserve the right to seek the rejection of such insurance policy or agreement or other available relief.

**Section 6.10    Miscellaneous**

The Debtors reserve the right to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease.

Notwithstanding any other provision of the Plan, each of the Debtors shall retain the right to, at any time prior to the Confirmation Hearing, modify, amend, or supplement the Plan Supplement, including the right to (a) delete any executory contract or unexpired lease listed therein, (b) add any executory contract or unexpired lease thereto, thus providing for its

assumption, assumption and assignment and/or rejection, as the case may be, or (c) modify the Cure Payment.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection of the executory contracts and unexpired leases as contemplated in this Article VI pursuant to section 365 of the Bankruptcy Code, as of the later of: (a) the Effective Date; or (b) the resolution of any objection to the proposed assumption or rejection of any such executory contract or unexpired lease.

## ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### Section 7.01   Objections to Claims

(a)     <u>Authority</u>.  The Debtors or the Reorganized Debtors, as applicable, (or their authorized representatives) shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims; provided, however, this provision shall not apply to Professional Fee Claims, which may be objected to by any party-in-interest in these Cases.  From and after the Effective Date, the Reorganized Debtors (or its authorized representatives) shall have and shall retain any and all available rights and defenses that the Debtors had with respect to any Claim or Equity Interest based on the limitations imposed by section 502 of the Bankruptcy Code and may settle or compromise any Disputed Claim without further notice to, order from, or approval of the Bankruptcy Court.  The Reorganized Debtors (or its authorized representatives) also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)     <u>Objection Deadline</u>.  As soon as practicable, but no later than the Claims Objection Deadline, the Reorganized Debtors (or their authorized representatives) may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims or Equity Interests to which objections are made.  Nothing contained herein, however, shall limit the right of the Disbursing Agent or Reorganized Debtors (or their authorized representatives) to object to Claims or Equity Interests, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Reorganized Debtor (or its authorized representatives) without notice or hearing.  Moreover, notwithstanding the expiration of the Claims Objection Deadline, the Disbursing Agent or the Reorganized Debtors (or their authorized representatives) shall, as applicable, continue to have the right to amend any Claims objections and to file and prosecute supplemental objections and counterclaims to a Disputed Claim until such Disputed Claim is or becomes Allowed by Final Order of the Bankruptcy Court.

### Section 7.02   Estimation of Claims

Any Debtor or Reorganized Debtor, as applicable, (or their authorized representatives), may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor or Reorganized Debtor, as applicable, previously objected to such Claim or whether the Bankruptcy

Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanism.

**Section 7.03   No Distributions Pending Allowance**

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim has become an Allowed Claim.

**Section 7.04   Distributions After Allowance**

The Disbursing Agent or the Reorganized Debtors, or applicable, shall make payments and Distributions to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Disbursing Agent or the Reorganized Debtors, as applicable, shall distribute to the Holder of such Claim the Distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.  After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property, if any, that was reserved on account of such Disputed Claim, if any, shall become property of the Reorganized Debtors, as applicable.

**Section 7.05   Prior Payment of Claims**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Reorganized Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

**Section 7.06   Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Reorganized Debtors or the Disbursing Agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision

in the Plan to the contrary, the Reorganized Debtors or the Disbursing Agent, as applicable, (or their authorized representatives) shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.  All Persons holding Claims or Equity Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**Section 8.01   Conditions Precedent to Effective Date**

The following are conditions to the occurrence of the Effective Date, unless such conditions, or any of them, have been satisfied or duly waived in accordance with Section 8.04 of the Plan:

(a)     the Confirmation Order shall be in form and substance reasonably acceptable to the Debtors, the Senior Credit Facility Agent, and the Majority Second Lien Noteholders in their respective discretion and shall be in full force and effect, shall have become a Final Order, and shall not have been amended, modified, reversed, vacated, or stayed pending appeal;

(b)     all authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained;

(c)     the Debtors shall have executed and delivered all documents necessary to effectuate the issuance of the New Goodrich Equity Interests;

(d)     the Restructuring Documents shall have been filed, tendered for delivery, and been effected or executed by all Entities party thereto (as appropriate), and in each case be in full force and effect.  All conditions precedent to the effectiveness of such Restructuring Documents shall have been satisfied or waived pursuant to the terms of such applicable Restructuring Documents (or shall be satisfied or waived concurrently with the occurrence of the Effective Date);

(e)     all other consents, actions, documents, certificates, and agreements necessary to implement the Plan, including documents contained in the Plan Supplement, shall have been obtained and not otherwise subject to unfulfilled conditions, effected, or executed and delivered, as the case may be, to the required parties and, to the

extent required, filed with the applicable governmental units in accordance with applicable laws;

(f)     all documents referenced in subsections (c), (d), and (e) of this Section 8.02, including all documents in the Plan Supplement, shall be acceptable to the Debtors, the Senior Credit Facility Agent, and the Majority Second Lien Noteholders in their respective sole discretion;

(g)     the Debtors shall have agreed upon the treatment of the Senior Credit Facility Claims with the Holders of Senior Credit Facility Claims and the Majority Second Lien Noteholders; and

(h)     the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Amount.

## Section 8.02    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## Section 8.03    Waiver of Conditions

Each of the conditions set forth in Section 8.01 (other than 8.01(a)) hereof, may be waived in whole or in part by written consent of the applicable Debtors, with the written consent of the Majority Second Lien Noteholders and the Senior Credit Facility Agent given in their respective sole discretion, without any notice to other parties in interest (other than the Wells Fargo, National Association, in its capacity as Senior Credit Facility Agent under the Senior Credit Facility) or the Bankruptcy Court and without a hearing; provided that if any such waiver would adversely affect the Holders of Senior Credit Facility Claims, each such waiver shall require the prior written consent from the Holders of Senior Credit Facility Claims holding more than a majority in aggregate principal amount of such Claims.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or the Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or Reorganized Debtors).  The failure of the Debtors or the Reorganized Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

Section 8.01(a) of the Plan may be waived by written consent and agreement between each of: (i) the applicable Debtors, (ii) the Senior Credit Facility Agent, and (iii) the Majority Second Lien Noteholders.

## Section 8.04    Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the

Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE IX
## AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date; provided, however, that where the Plan requires a document to be acceptable to the Second Lien Noteholders or the Holders of Senior Credit Facility Claims, as applicable, the Debtors may not modify such document without the consent of the Majority Second Lien Noteholders or the Holders of Senior Credit Facility Claims, as the case may be, with such consent not to be unreasonably withheld. After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, in a manner that is acceptable to the Debtors, the Majority Second Lien Noteholders, and the Senior Credit Facility Agent, in their respective sole discretion, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Equity Interests under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE X
## RETENTION OF JURISDICTION

### Section 10.01  Retention of Jurisdiction

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the secured or unsecured status, priority, amount or allowance of Claims or Equity Interests;

(b)      hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)      hear and determine all matters with respect to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with respect to which one or more of the Debtors or Reorganized Debtors, as applicable, may be liable, including, if necessary, the nature or amount of any required cure or the liquidation of any claims arising therefrom;

(d)      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Cases, provided, however, that the Reorganized Debtors reserve the right to commence their applicable actions in all appropriate forums and jurisdictions;

(e)      enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate or otherwise aid in the execution, implementation or consummation of the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, the Restructuring Documents, or the Confirmation Order;

(f)      hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(g)      consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(i)      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(j)      hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(k)     enforce all orders previously entered by the Bankruptcy Court, and any and all other orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Cases or pursuant to the Plan;

(l)     recover all assets of the Debtors, Reorganized Debtors, and property of the Estates, wherever located;

(m)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)     hear and determine all disputes involving the existence, nature, or scope of the Reorganized Debtors' discharge or any releases granted in the Plan;

(o)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(p)     enter an order or final decree concluding or closing the Cases; and

(q)     resolve any issues related to any matters adjudicated in the Cases.

Notwithstanding the foregoing, if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Cases, including the matters set forth in this Article of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**Section 10.02  No Bankruptcy Court Approval Required**

Notwithstanding the retention of jurisdiction provided herein, where the Plan provides that the Reorganized Debtors may take action or otherwise exercise rights under the Plan without further order or approval of the Bankruptcy Court, the retention of jurisdiction provided for herein shall not require the Reorganized Debtors to seek Bankruptcy Court approval before taking such action or exercising rights under the Plan.

**ARTICLE XI**
**COMPROMISES AND SETTLEMENTS**

Except as otherwise provided in the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and

41

settlements are in the best interests of the Debtors, the Estates, Holders of Claims and Equity Interests, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

It is not the intent of the Debtors that Confirmation of the Plan shall in any manner alter or amend any settlement and compromise between the Debtors and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

**Section 12.01  Bar Dates for Certain Claims**

(a)    Administrative Claims/Substantial Contribution Claims.  The Confirmation Order will establish a bar date for filing of all Administrative Claims, including Substantial Contribution Claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee, or Administrative Claims in section (b) below), which date shall be the Administrative Claims Bar Date.  Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. § 1930, administrative tax claims and administrative ordinary course liabilities, must file requests for payment of any Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Reorganized Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date.  The Reorganized Debtors shall have ninety (90) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

(b)    Administrative Ordinary Course Liabilities.  Holders of Administrative Claims that are based on liabilities incurred in the ordinary course of the applicable Debtors' businesses (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) shall not be required to file any request for payment of such Administrative Claims. Such Administrative Claims, unless objected to by the applicable Debtors or Reorganized Debtors, shall be assumed and paid by the applicable Reorganized Debtors, in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim. For the avoidance of doubt, Holders of Administrative Claims pursuant to section 503(b)(9) of the Bankruptcy Code shall be required to file a proof of Administrative Claim on or before the Administrative Claims Bar Date.

**Section 12.02  Payment of Statutory Fees**

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

**Section 12.03  Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, upon the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 12.04  Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to in the Plan, including any Holder of a Claim or Equity Interest, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Section 12.05  Discharge of the Debtors**

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims and Equity Interests of any nature whatsoever shall be automatically discharged forever.   Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, Reorganized Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims and Equity Interests, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan.   The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto.   As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Reorganized Debtors and their Affiliates or their property to the extent it relates to a discharged Claim.

**Section 12.06  Exculpation**

**THE PROTECTED PARTIES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR ARISING OUT OF, THE CASES, THE NEGOTIATION, FORMULATION, DISSEMINATION, CONFIRMATION, CONSUMMATION, OR ADMINISTRATION OF THE PLAN OR THE RESTRUCTURING DOCUMENTS,**

PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, OR ANY OTHER ACT OR OMISSION IN CONNECTION WITH THE CASES, THE PLAN, THE DISCLOSURE STATEMENT, THE OTHER RESTRUCTURING DOCUMENTS OR ANY CONTRACT, INSTRUMENT, OR OTHER AGREEMENT OR DOCUMENT RELATED THERETO OR DELIVERED THEREUNDER, OR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH THE RESTRUCTURING OF THE DEBTORS; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE FOREGOING SHALL NOT EXTEND TO SUCH EXCULPATED PERSON'S RIGHTS AND OBLIGATIONS UNDER THE PLAN, THE RESTRUCTURING DOCUMENTS, AND THE CONFIRMATION ORDER, OR AFFECT THE LIABILITY OF ANY ENTITY THAT OTHERWISE WOULD RESULT FROM ANY SUCH ACT OR OMISSION TO THE EXTENT THAT SUCH ACT OR OMISSION IS DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE.

THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.

**Section 12.07  Permanent Injunction**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO OR RELATING TO ANY SUCH CLAIM OR EQUITY INTEREST, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY RELEASED PARTY ON ACCOUNT OF OR RELATING TO ANY SUCH CLAIM OR EQUITY INTEREST, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST ANY RELEASED PARTY OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF SUCH PROTECTED PARTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST, AND (D) ASSERTING ANY RIGHT OF SETOFF, RECOUPMENT OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY RELEASED PARTY OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF ANY RELEASED PARTY ON ACCOUNT OF ANY SUCH CLAIM OR EQUITY INTEREST.  THE FOREGOING INJUNCTION WILL EXTEND TO SUCCESSORS OF ANY PROTECTED PARTY AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN THE PROPERTY.

**Section 12.08  Releases by the Debtors, Reorganized Debtors, and their Estates**

PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE

CONFIRMATION ORDER, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE EXPEDITIOUS REORGANIZATION OF THE DEBTORS, THE REORGANIZED DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, ON AND AFTER THE EFFECTIVE DATE, THE DEBTORS, REORGANIZED DEBTORS, AND THEIR ESTATES, FOR THEMSELVES AND ON BEHALF OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, LOSSES, COSTS AND EXPENSES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES OF ANY KIND OR CHARACTER WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, REORGANIZED DEBTORS, AND THEIR ESTATES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, SUSPECTED OR UNSUSPECTED, MATURED OR UNMATURED, FIXED OR CONTINGENT, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTORS, THE REORGANIZED DEBTORS OR THEIR RESPECTIVE AFFILIATES OR ESTATES EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, OR OTHERWISE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY, AGAINST ANY RELEASED PARTY ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE OPERATION OF OR ADMINISTRATION OF DEBTORS' BUSINESS AND ASSETS, THE CASES, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG ANY TWO OR MORE OF ANY DEBTOR, ANY REORGANIZED DEBTOR, OR ANY RELEASED PARTY (AND THE ACTS OR OMISSIONS OF ANY OTHER RELEASED PARTY IN CONNECTION THEREWITH), THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE OTHER RESTRUCTURING DOCUMENTS, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE, INCLUDING THE MANAGEMENT AND OPERATION OF THE DEBTORS, TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.  NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS SECTION 12.08 SHALL RELEASE ANY RELEASED PARTY OR OTHER INDIVIDUAL FROM ITS RESPECTIVE RIGHTS AND OBLIGATIONS UNDER THE PLAN, THE RESTRUCTURING DOCUMENTS, OR THE CONFIRMATION ORDER OR LIABILITY FOR (A) ANY ACT OR OMISSION BY

SUCH RELEASED PARTY OR OTHER INDIVIDUAL INCLUDED WITHIN THIS RELEASE THAT IS FOUND BY A COURT OF COMPETENT JURISDICTION IN A FINAL, NON-APPEALABLE JUDGMENT TO CONSTITUTE FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (B) ANY OBLIGATION FOR BORROWED MONEY OWED BY A RELEASED PARTY TO THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR RESPECTIVE AFFILIATES OR ESTATES.

THE FOREGOING RELEASES SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED PURSUANT TO THESE RELEASES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE FOREGOING RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH SUCH RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY SUCH RELEASE; (III) IN THE BEST INTEREST OF THE DEBTORS AND THEIR ESTATES; (IV) FAIR, EQUITABLE AND REASONABLE; AND (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

**Section 12.09  Releases by Holders of Claims and Equity Interests**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN CONSIDERATION OF THE DISTRIBUTIONS UNDER THE PLAN AND OTHER RELEASES, AGREEMENTS, OR DOCUMENTS EXECUTED AND DELIVERED IN CONNECTION WITH THE PLAN, HOLDERS OF CLAIMS AND EQUITY INTERESTS WHO DO NOT FILE AN OPT-OUT NOTICE OR INDICATE THAT THEY OPT OUT OF THIS RELEASE ON THEIR BALLOT, FOR THEMSELVES AND ON BEHALF OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, SHALL BE DEEMED TO HAVE CONSENTED TO THE PLAN FOR ALL PURPOSES AND THE RESTRUCTURING EMBODIED HEREIN AND SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, LOSSES, COSTS AND EXPENSES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES OF ANY KIND OR CHARACTER WHATSOEVER, INCLUDING

ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR ESTATES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, SUSPECTED OR UNSUSPECTED, MATURED OR UNMATURED, FIXED OR CONTINGENT, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT SUCH ENTITY EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, OR OTHERWISE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY OR DIRECTLY OR DERIVATIVELY), AGAINST ANY RELEASED PARTY ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE OPERATION OF OR ADMINISTRATION OF THE DEBTORS' BUSINESS AND ASSETS, THE CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG ANY TWO OR MORE OF ANY DEBTOR, ANY REORGANIZED DEBTOR, OR ANY OTHER RELEASED PARTY (AND THE ACTS OR OMISSIONS OF ANY OTHER RELEASED PARTY IN CONNECTION THEREWITH), THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE OTHER RESTRUCTURING DOCUMENTS OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE, INCLUDING THE MANAGEMENT AND OPERATION OF THE DEBTORS, TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.  NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS SECTION 12.09 SHALL RELEASE ANY RELEASED PARTY FROM ITS RESPECTIVE RIGHTS AND OBLIGATIONS UNDER THE PLAN, THE RESTRUCTURING DOCUMENTS, OR THE CONFIRMATION ORDER OR LIABILITY FOR ANY ACT OR OMISSION BY SUCH RELEASED PARTY THAT IS FOUND BY A COURT OF COMPETENT JURISDICTION IN A FINAL, NON-APPEALABLE JUDGMENT TO CONSTITUTE FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.

THE FOREGOING RELEASES SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED PURSUANT TO THESE RELEASES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE FOREGOING RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH SUCH RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY SUCH RELEASE; (III) IN THE BEST INTEREST OF THE DEBTORS AND THEIR ESTATES; (IV) FAIR, EQUITABLE AND REASONABLE; AND (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

**Section 12.10  Waiver of Statutory Limitations on Releases**

Each of the parties providing the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action which the releasing party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may have materially affected its settlement with the Protected Party.  The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

**Section 12.11  Indemnification of the D&O Indemnified Parties**

The Reorganized Debtors shall, and the Debtors and their respective Estates shall continue to, indemnify and hold harmless the D&O Indemnified Parties from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, or disbursements of any kind or nature whatsoever that may be imposed on, incurred by, or asserted against in any way relating to or arising out of such indemnified parties' relationship to the Debtors or their respective Estates, the Bankruptcy Restructuring, or any action taken or omitted to be taken by each such indemnified party in connection therewith, but in each case only to the extent that (a) the acts, omissions or alleged acts or omissions of such applicable Person were indemnifiable under the Debtors' prepetition organizational documents (whether in the bylaws, certificates of incorporation, charters, operating agreements, board resolutions, employment contracts or otherwise) and (b) the otherwise indemnifiable expense, liability, loss, or other amount is determined not to be covered under any applicable directors' and officers' insurance policy purchased by the Debtors prior to the Effective Date. Notwithstanding anything to the contrary herein, the Reorganized Debtors, the Debtors and their respective Estates shall not be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses, or disbursements resulting from such indemnified parties' fraud, willful misconduct, or gross negligence.

48

The Debtors or the Reorganized Debtors, as the case may be, may purchase for the benefit of the D&O Indemnified Parties, a director and officer insurance coverage policy consistent with any existing policies of the Debtors and customary for transactions of this nature and type, without further notice to or order of the Bankruptcy Court.

**Section 12.12  Satisfaction of Claims**

Except as otherwise provided in the Plan, the rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property.  Except as otherwise provided in the Plan, on the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged, and released in full.  Neither the Reorganized Debtors, nor their Affiliates, shall be responsible for any pre-Effective Date obligations of the Debtors, except those expressly assumed by the Reorganized Debtors or their Affiliates, as applicable.  Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against Reorganized Debtors and their Affiliates, their respective successors or assigns, or their assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims, Equity Interests or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

**Section 12.13  Discharge of Liabilities**

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Reorganized Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by, but subject to the limitations of, section 1141 of the Bankruptcy Code, and all Holders of Claims and Equity Interests shall be precluded from asserting against the Reorganized Debtors and their Affiliates, their respective assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE REORGANIZED DEBTORS SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE, OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTORS AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO THE REORGANIZED DEBTORS).**

Notwithstanding anything to the contrary herein, unless Holders of Senior Credit Facility Claims are paid in full in cash in accordance with the Plan, and unless otherwise agreed to by the

Holders of Senior Credit Facility Claims, all rights and defenses (other than as a direct result of the filing of the chapter 11 cases) of Holders of Senior Credit Facility Claims, including by or through the Senior Credit Facility Agent arising under or related to the Senior Credit Facility, and all Liens, Claims, and encumbrances arising under or related to the Senior Credit Facility are preserved and are not discharged, released, or enjoined under the Plan.

**Section 12.14  Integral Part of Plan**

Each of the provisions set forth in the Plan with respect to the settlement, release, discharge, exculpation, injunction, indemnification and insurance of, for or with respect to Claims and/or Causes of Action is an integral part of the Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision.

**Section 12.15  Third Party Agreements; Subordination**

The Plan Distributions to the various classes of Claims and Equity Interests hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto shall remain in full force and effect, <u>except</u> as compromised and settled pursuant to the Plan.  Plan Distributions to Holders of Claims in classes that are subject to contractual subordination provisions are subject to Distribution in accordance with such contractual subordination provisions as provided in the Plan.   Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.  The right of the Debtors or Reorganized Debtors to seek subordination of any Claim or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Equity Interest that becomes a subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated Claim or subordinated Equity Interest.

**Section 12.16  Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Reorganized Debtors, all present and former Holders of Claims against and Equity Interests in the Reorganized Debtors, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors, and all other parties-in-interest in the Cases.  Notwithstanding the foregoing, except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Plan is Consummated.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

**Section 12.17  Plan Supplement**

Any and all exhibits, lists, or schedules not filed with the Plan or the Disclosure Statement shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court not later than fourteen (14) days prior to the Confirmation Hearing Date or such other filing deadline as may be approved by the Bankruptcy Court.  Holders of Claims or Equity Interests may also obtain a copy of the Plan Supplement upon written request to the Debtors. Notwithstanding the foregoing, the Debtors may amend the Plan Supplement, and any attachments thereto, through and including the Confirmation Date.

**Section 12.18  Notices**

Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors or Reorganized Debtors shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors or Reorganized Debtors:

Goodrich Petroleum Corporation
801 Louisiana St, Suite 700
Houston, Texas 77002
Attn: Michael Killelea
Tel:.  (713) 780-9494
Fax:  (713) 780-9254

with a copy to (which shall not constitute notice):

Harry A. Perrin
Vinson & Elkins LLP
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel:  (713) 758-2222
Fax:  (713) 758-2346

Bradley R. Foxman
Vinson & Elkins LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, TX  75201-2975
Tel: (214) 220-7784
Fax: (214) 220-7716

**Section 12.19  Term of Injunctions or Stay**

Unless otherwise provided in the Plan or Confirmation Order, all temporary injunctions or stays provided for in the Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.  All permanent injunctions in existence on the Effective Date shall remain in full force and effect as provided in the order imposing such permanent injunction.

**Section 12.20  Setoffs**

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, each Reorganized Debtor may setoff against any Allowed Claim or Equity Interest and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before such Distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder.  **In no event shall any Holder of Claims or Equity Interests be entitled to setoff any Claim or Equity Interest against any Claim, right, or Cause of Action of the Debtors or Reorganized Debtors, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any proof of Claim or Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.**

**Section 12.21  Recoupment**

Except as provided in the Plan, any Holder of Claims or Equity Interest shall not be entitled to recoup any Claim or Equity Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any proof of Claim or Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**Section 12.22  Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim,

satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Reorganized Debtors or their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

**In addition to, and in no way a limitation of, the foregoing, to the extent the Debtors' property or assets are encumbered by mortgages, security interests or Liens of any nature for which any Holder of such mortgages, security interests or Liens does not have an Allowed Claim against such Debtor or such Debtor's property, or such Allowed Claim has been satisfied as provided in the Plan or valid mortgage, security interest or Lien, such mortgages, security interests or Liens shall be deemed fully released and discharged for all purposes and such Holder shall execute such documents as reasonably requested by the applicable Reorganized Debtor in form and substance as may be necessary or appropriate to evidence the release of any such mortgages, security interests or Liens of any nature and the applicable Reorganized Debtor as authorized to cause the filings of such documents with any and all governmental or other entities necessary or appropriate to effect such releases.  If such Holder fails to execute such documents, the applicable Reorganized Debtor is authorized to execute such documents on behalf of such Holder and to cause the filing of such documents with any or all governmental or other entities as may be necessary or appropriate to effect such releases.**

## Section 12.23  Dissolution of any Committees

On the Effective Date, any Committee shall dissolve and the members of such Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Cases.

## Section 12.24  Protection Against Discriminatory Treatment

To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including governmental units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, or discriminate with respect to such a grant to, the Reorganized Debtors, solely because any Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Cases (or during the Cases but before the Debtors are granted or denied a discharge) or has not paid a debt that is dischargeable in the Cases.

## Section 12.25  No Admissions

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

**Section 12.26  Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, shall be governed by the laws of the state or county of organization of such Debtor or Reorganized Debtor.

**Section 12.27  Further Assurances**

The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims receiving Distributions hereunder, and all other Entities shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan, the Restructuring Documents, or the Confirmation Order.

**Section 12.28  Tax Reporting and Compliance**

The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the applicable Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

**Section 12.29  Entire Agreement**

Except as otherwise provided herein or therein, the Plan and the Restructuring Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and the Restructuring Documents.

**ARTICLE XIII**
**CONFIRMATION REQUEST**

The Debtors request Confirmation of the Plan under section 1129 of the Bankruptcy Code.  If any Impaired Class does not accept the Plan pursuant to section 1126 of the Bankruptcy Code, the Debtors request Confirmation pursuant to section 1129(b) of the Bankruptcy Code.  In that event, the Debtors reserve the right to modify the Plan to the extent (if any) that Confirmation of the Plan under section 1129(b) of the Bankruptcy Code requires modification.

*[Signature Page Immediately Follows]*
