UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

GOODRICH PETROLEUM
CORPORATION, ET AL.
    Debtors

CASE NO. 16-31975

CHAPTER 11

Jointly Administered

_____

**CAROLYN JULIA CLARK, MICHELE
CLARK CADWALLADER, TRUSTEE
OF THE CAROLYN JULIA CLARK
FAMILY 2011 TRUST; CHRISTOPHER
STUART CLARK, SUCCESSOR OF
THE CHRISTOPHER STUART CLARK
MANAGEMENT TRUST; CHRISTOPHER
STUART CLARK, TRUSTEE OF THE
CHRISTOPHER STUART CLARK
FAMILY 2011 TRUST; MICHELE CLARK
CADWALLADER, INDIVIDUALLY AND
AS TRUSTEE OF THE MICHELE CLARK
CADWALLADER FAMILY 2011 TRUST;
ALDES HARRAND CADWALLADER V;
WALTER CLARK CADWALLADER;
4819, LTD; KATHERINE BURNS TERRY
HORLEN, TRUSTEE OF THE JOHN DAVID
TERRY, III 1994 TRUST; KATHERINE BURNS
TERRY HORLEN, TRUSTEE OF THE LISA
CHRISTINE TERRY 1994 TRUST; AND
BURNS RANCH ENTERPRISES, LLC**

    Plaintiffs

  V.

**GOODRICH PETROLEUM COMPANY, LLC**
    Defendant.

ADVERSARY PROCEEDING

No:_____

ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

1

The Plaintiffs, (1) CAROLYN JULIA CLARK; (2) MICHELE CLARK CADWALLADER, Trustee of the CAROLYN JULIA CLARK FAMILY 2011 TRUST; (3) CHRISTOPHER STUART CLARK, Successor of the CHRISTOPHER STUART CLARK MANAGEMENT TRUST; (4) CHRISTOPHER STUART CLARK, Trustee of the CHRISTOPHER STUART CLARK FAMILY 2011 TRUST; (5) MICHELE CLARK CADWALLADER, individually and as Trustee of the MICHELE CLARK CADWALLADER FAMILY 2011 TRUST; (6) ALDES HARRAND CADWALLADER V; (7) WALTER CLARK CADWALLADER; (8) 4819, Ltd., a Texas Limited Partnership; (9) KATHERINE BURNS TERRY HORLEN, Trustee of the JOHN DAVID TERRY, III 1994 TRUST; (10) KATHERINE BURNS TERRY HORLEN, Trustee of the LISA CHRISTINE TERRY 1994 TRUST; AND (11) BURNS RANCH ENTERPRISES, LLC (collectively, also referred to herein as the "Burns" or "Plaintiffs") bring this Complaint against Defendant, Goodrich Petroleum Company, LLC.

## A. JURISDICTION AND VENUE

1. This Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1334. This is a core proceeding.

2. Venue is proper in this Court under 28 U.S.C. § 1409(a).

## B. THE DEFENDANT'S INTEREST IN THE BURNS OIL AND GAS LEASES

3. The Burns are the owners of undivided mineral and royalty interests under approximately 29,937.01 acres of land partly situated in La Salle County, Texas and partly situated in Frio County, Texas, commonly referred to herein as the "Burns Ranch". The Burns have succeeded to the mineral and royalty interests of T. E. Burns and Patricia Burns Clark.

4. On February 1, 2010, the Patricia Burns Clark Trust Under the Will of T. E. Burns, Deceased, and the Patricia Burns Clark (Dailey) Irrevocable Trust Under Agreement Dated May

2

1, 1961 by JP Morgan Chase Bank, N.A., Trustee, as Lessor, and BB-II Operating, LP ("BB"), as Lessee, entered into an Oil and Gas Lease covering certain of Lessor's undivided interests in oil, gas and associated hydrocarbons under 24,803.70 acres out of the Burns Ranch.[1]

5. On March 16, 2010, Patricia Burns Clark Dailey, as Lessor, and Chesapeake Exploration, L.L.C. ("Chesapeake"), as Lessee, entered into an Oil and Gas Lease covering certain of Lessor's undivided interests in oil, gas and associated hydrocarbons under 24,824.78 acres out of the Burns Ranch.[2]

6. On May 16, 2010, 4819, Ltd., as Lessor, and Chesapeake Exploration, L.L.C., as Lessee, entered into an Oil and Gas Lease covering certain of Lessor's undivided interest in oil, gas and associated hydrocarbons under 24,824.78 net acres out of the Burns Ranch.[3]

7. The Burns Trust Lease, the Burns Clark Lease and the 4819 Lease are collectively referred to herein as the "Leases".

8. For clarity, the Leases each cover undivided rights to oil and gas under the same acres of the Burns Ranch. Each of the Leases in effect overlays one another so that the obligations and operations of the lessee anywhere on the above 24,824.78 acres shall be subject to all of the terms and provisions of each of the Leases.

---

[1] A Memorandum of Oil and Gas Lease is recorded in Volume 491 Pages 325-328 of the Official Public Records of La Salle County, Texas and Volume 70 Pages 483-488 of the Official Public Records of Frio County, Texas, and a copy of the Oil and Gas Lease is attached hereto as Exhibit "A" and referred to herein as the "Burns Trust Lease".

[2] A Memorandum of Oil and Gas Lease is recorded in Volume 501 Pages 433-437 of the Official Public Records of La Salle County, Texas and Volume 128 Pages 245-250 of the Official Public Records of Frio County, Texas, and a copy of the Oil and Gas Lease is attached hereto as Exhibit "B" and referred to herein as the "Burns Clark Lease".

[3] A Memorandum of Oil and Gas Lease is recorded in Volume 501 Pages 443-447 of the Official Public Records of La Salle County, Texas, and a copy of which Oil and Gas Lease is attached hereto as Exhibit "C" and referred to herein as the "4819 Lease".

9. Goodrich Petroleum Company, LLC (hereinafter sometimes referred to as "Defendant" or "Goodrich") first acquired an interest in the Leases by partial assignment of the Burns Trust Lease. Defendant and Chesapeake then cross-assigned their rights to certain depths under the Leases to each other effective May 16, 2010, to the end that Defendant held an interest in all 3 of the Leases as to certain depths under a certain segregated 12,093.24 acres, more or less, of the Burns Ranch, and Chesapeake held an interest in all 3 of the Leases as to certain depths under a certain segregated 12,092.64 acres, more or less, of the Burns Ranch.[4] Partial assignments of the Leases were also made to third parties, however, for purposes of this Paragraph, any such assignments are omitted to avoid confusion.

10. Because of the cross-assignments, the rights and interests of each working interest owner (i.e., Goodrich, Chesapeake, etc.) under any acreage covered by the Leases are subject to all of the terms, conditions and obligations of each of the Leases.

## C. BACKGROUND FACTS

11. Each of the Leases provides for the specific method that Defendant (and other working interest claimants of the Leases) must follow in calculating and paying royalties under the Leases.

12. Each of the Leases provides that if royalties are not fully and timely paid, then the affected royalty owners have certain rights and remedies. Each of the Leases also provide for the right of the lessee to avoid certain results from lessee's failure to timely and properly pay royalties, including termination of the lease.

---

[4] Attached as Exhibit "D" is the Cross Assignment with a plat of the Burns Ranch depicting the area of the Leases held by Defendant shaded in dark grey as a result of the cross-assignment, and the area of the Leases claimed by Chesapeake as a result of the cross-assignment shaded in light gray. Hereafter, the portion of the Leases held by Defendant as a result of the cross-assignment will sometimes be referred to herein as the "Defendant Lease Area" and the portion of the Leases held by Chesapeake as a result of the cross-assignment will sometimes be referred to as the "CHK Lease Area".

4

13. The Leases include express language regarding potential consequences for the lessee's failure to pay royalties.

   a) The Burns Trust Lease in Paragraph 7.H. provides the following: "Lessor may give Lessee written notice of such default in payment of royalties and Lessee shall have thirty (30) days after receipt of such notice to pay to Lessor all royalties then due and owed plus interest on such past-due amounts as hereinabove provided. If full payment (including interest) has not been received by Lessor within the 30-day period after notice, Lessor may ipso facto terminate this lease and evict Lessee forthwith; provided, however, that if Lessee shall assert by written notice to Lessor within the 30-day period that a good faith, bona fide dispute exists, based on an attorney's written opinion which is included with Lessee's notice, as to the entitlement of Lessor to payment of such royalties, Lessee may then satisfy its obligations to pay such disputed royalties hereunder and avoid termination of this lease by paying such disputed royalties to a trustee acceptable to both parties, which trustee shall retain and invest such disputed royalties in interest bearing accounts approved by Lessor pending resolution of the royalty entitlement dispute, with interest to belong to the rightful royalty owner." **See Exhibit A**.

   b) The Burns Clark Lease and the 4819 Lease in Paragraph 5.8.3 provide the following: "If undisputed royalties owed to Lessor or royalty owner are not paid within sixty (60) days after Lessor or royalty owner has given Lessee written notice of such default, by certified mail, return receipt requested to the following office and representatives of Lessee, then this Lease shall terminate." "If a bona fide dispute exists as to such unpaid royalty, then such disputed royalty shall be paid in accordance with subparagraph 5.9 below." **See Exhibits B and C**.

14. The Burns initially requested information from Defendant pursuant to their rights under the Leases on February 18, 2013 (**See Exhibit E**) in order to verify production volumes relating to their royalty payments. Defendant failed to respond to such request. Thereafter, the Burns through their agents requested information on March 5, 2013, April 10, 2013, April 29, 2013, August 5, 2013, and October 18, 2013 to no avail.

15. On November 24, 2014, Burns sent Defendant a Notice of Audit and Request for Information (**See Exhibit F**) to verify whether or not royalty payments had been made in accordance with the terms and provisions of the Leases.

16. On February 26, 2015, Defendant provided Burns with some of the information that it is required to provide under the Lease, but not all items were produced. The Burns proceeded with their audit despite Defendant's failure to provide all information needed for such audit.

17. Sometime during July, 2015, while Defendant's audit was ongoing, Defendant entered into an agreement with EP Energy E&P Company, L.P. ("EP") to transfer and assign most of the interest it had in the Leases to EP. After Defendant entered into the agreement with EP, Defendant requested that the Burns consent to the assignment. Paragraph 12 of the Burns Trust Lease provides that any assignment of that Lease <u>must first be consented to by Lessor or such assignment will be void</u>.

18. On August 7, 2015, Burns notified Defendant that Defendant had failed to pay Burns all royalties due on production from the Leases.[5] **See Exhibit G**. Before agreeing to consent to the assignment to EP, the Burns wanted assurance that the Burns would be paid all delinquent royalties.

---

[5] Notice of Failure to Pay Royalty was also sent to other parties claiming a working interest in the Burns Leases.

19. On August 28, 2015, representatives of Defendant and the Burns met in San Antonio, Texas, in an attempt to settle the Burns claims for unpaid, delinquent royalties. At that meeting, Burns and their consultants presented Defendant with limited, preliminary audit results. The results were limited and preliminary because Defendant breached the Leases by failing to provide all the requested information, especially information needed for the Burns to complete their audit.

20. The meeting concluded with the Burns and Defendant signing a letter agreement (the "Agreement") dated August 28, 2015. **See Exhibit H**. In keeping with the commitment under the Agreement, the Burns and Defendant signed the Consent to Assignment of Oil and Gas Leases ("consent") to EP. **See Exhibit I**.

21. The Agreement required the following:

    a. That Defendant pay a non-refundable sum of $583,000.00 to the Burns on Monday, August 31, 2015;

    b. That Defendant reimburse the Burns for audit fees and expenses, to the extent that such sum exceeds $50,000.00, but not more than $180,000.00, the day after Defendant received statements from the Burns;

    c. Upon closing of Defendant's transaction with EP on Friday, September 4, 2015, Defendant would escrow the sum of $500,000.00 in a secure account that is subject to a mutually agreeable escrow agreement with Broadway Bank in San Antonio, Texas as the escrow agent; and

    d. The parties agree to work together to conclude the audit and resolve pending audit issues, if any, within 90 days of the escrow.

22. Defendants complied with the payment of $583,000.00. **See Exhibit J-1**.

23. The Burns submitted the statements for audit fees and expenses as required under the Agreement, but the Defendant did not pay the agreed upon amount of reimbursement to the Burns. **See Exhibits J-2, J-3 and J-4**. Although required by the Agreement, Defendant never funded the required escrow amount and the audit was not completed. **See Exhibit J-5**. Pursuant to the Agreement, the escrow funds were to be paid at closing from the proceeds of Defendant's assignment of the Leases to EP, which closing occurred a few days after the Burns Agreement. If not for the Agreement, the Burns would not have consented to Defendant's assignment to EP, which Defendant's received more than $100,000,000.00 from such consent to the assignment.

24. The failure of Defendant to comply with all of the terms and conditions of the Agreement raises the question as to whether the failure of consideration results in the invalidity of the consent to assign and whether the consent to the assignment to EP fails for lack of consideration.

25. On April 6, 2016, the Burns sent a reminder of the audit and obligations of the Agreement to Goodrich. The notice contained an additional Notice of Failure to Pay Royalty. Neither Defendant nor EP responded to the Notice of Failure to Pay Royalty within the time 30 day period of the Burns Clark Lease and the 4819 Lease and the 60 day period under the Burns Trust Lease as required under the Leases.[6] **See Exhibit K.**

26. The audit has not been closed and remains pending. To date, the Burns have calculated non-payments in excess of $8,105,685.90, plus interest as required by the Leases or state law.

27. In violation of Defendant's duties under the Leases, Defendant failed to calculate and pay all royalty payments owed to the Burns under the Leases including using prices lower than those required under the Leases; by wrongfully deducting costs and expenses and/or making adjustments to the price or value used to calculate royalties; by failing to pay correctly on fuel

---

[6] The Notice of Failure to Pay Royalty was also sent to EP and parties claiming a working interest.

8

use (on and off the lease premises) and flared gas; and/or by not paying royalties on all volumes produced from the Leases. Such non-payments are a breach of the Leases.

### D. REQUEST FOR DECLARATORY JUDGMENT

28. Plaintiffs invoke the Federal Declaratory Judgment Act as provided in 28 U.SC. § 2202 and the Texas Declaratory Judgment Act as provided in Chapter 37 of the Texas Civil Practice & Remedies Code.

29. Plaintiffs allege the performance or occurrence of all conditions precedent have been performed or have occurred with regard to recovery on all elements of Plaintiffs' claims or requests for declaratory judgment.

30. Plaintiffs request that this Court determine and/or declare the rights, status, and legal relations between Plaintiffs and Defendant with regard to the Leases.

31. Plaintiffs request that this Court determine and/or declare the rights, status, and legal relations between Plaintiffs and Defendant with regard to the consent, which Plaintiffs executed and delivered to Defendant consenting to the assignment of the Burns Trust Lease

32. Plaintiffs request that this Court determine and/or declare the rights, obligations, status and legal relations of Plaintiffs and Defendant with respect to the payment of royalties on all leased substances under the Leases.

33. Plaintiffs request that this Court determine and/or declare the amount of royalties to be paid on all leased substances under the Leases.

34. Plaintiffs request that this Court also determine and/or declare the following:

    a. the access or rights which the Plaintiffs have to review and/or receive information or documentation, pertaining to operations, marketing and production, under the Leases;

    b. whether the royalties which are to be paid by the Lessee were paid properly and/or timely under the Leases;

    c. the rights and status of the parties under Paragraph 7.H. of the Burns Trust Lease and Paragraph 5.8 of the Burns Clark Lease and 4819 Lease;

    d. the time, method and manner of payment on royalties under the Leases;

    e. the rights of the Plaintiffs to a full explanation of any deductions or adjustments made, if any, which affect the calculation and payment of royalty under the Leases;

    f. the conditions upon and manner(s) in which the lessee is to pay disputed royalties under the Leases;

    g. the rights, status and other legal relations of the parties pursuant to the Leases; and

    h. the attorneys' fees, interest, costs, and expenses paid and/or incurred by Plaintiffs in enforcing or seeking to enforce the terms and provisions of the Leases.

35. Plaintiffs request a declaratory judgment determining whether the Plaintiffs have received or been paid all benefits, sums, amounts, proceeds or royalties as described and contemplated by the Leases.

36. Plaintiffs request a declaratory judgment determining whether the termination provisions contained in the Leases were triggered resulting in the automatic termination of the Leases. In the event the termination provisions contained in the Leases were triggered, Plaintiffs further request a declaratory judgment determining the extent of such termination(s).

37. An award of reasonable and necessary attorneys' fees and expenses and court costs to Plaintiffs against Defendant under the Burns Clark Lease and 4819 Lease or Section 37.009 of the Texas Civil Practice & Remedies Code and the Federal Declaratory Judgment Act.

### E. TRESPASS

38. In the event the Court and/or fact finder determine(s) that the Leases terminated, all activities conducted by Defendant on the Burns Ranch since the termination would constitute a wrongful trespass. A lessee and/or assignee of a mineral interest(s) who enters the land after

termination of the lease and termination of the right to enter is liable for injury resulting from such unlawful entry. In the event a wrongful trespass occurred, Plaintiffs seek monetary relief over $1,000,000.00.

## F. TRESPASS TO TRY TITLE

39.     In the event the Court and/or fact finder determine(s) that the Leases terminated, Plaintiffs invoke the trespass to try title cause of action against Defendant pursuant to § 22.001 et seq. of the Texas Property Code and Rule 783 et seq. of the Texas Rules of Civil Procedure and request a determination of title to the leased premises and/or the Leases. If the Leases have terminated, Plaintiffs request damages against Defendant for the use and occupation of the leased premises and for those damages resulting from the wrongful use, development or production of the oil, gas and other minerals underlying the Leases. In such event, Plaintiffs seek monetary relief over $1,000,000.00.

## G. SUIT TO QUIET TITLE

40.     In the event the Court and/or fact finder determine(s) that the Leases terminated, Defendant's assertion of title to all of the leasehold interests described in the Leases casts a cloud on the mineral interests and/or royalty interests owned by Plaintiffs. In such event, Plaintiffs invoke this Court's equitable power to remove the cloud on the mineral interests and/or royalty interests owned by Plaintiffs by quieting title to said interests described in the Leases and/or relevant deeds.

## H. CONVERSION

41.     In the event the Court and/or fact finder determine(s) that the Leases terminated, Defendant has wrongfully asserted dominion or control over the mineral interests owned by Plaintiffs and/or the oil, gas and other minerals produced from the leased premises, since

termination. In such event, Defendant and any other working interest claimants have wrongfully depleted the mineral interests owned by Plaintiffs and/or the oil, gas and other minerals produced from the leased premises and have wrongfully asserted dominion or control over the proceeds or the fair market value of same, since termination. Contingent on such finding, Plaintiffs sue Defendant for all actual damages incurred on account of Defendant's conversion. In such event, Plaintiffs seek monetary relief over $1,000,000.00.

42. In addition, in the event the Court and/or fact finder determine(s) that the Defendant failed to pay royalties as required by the terms and provisions of the Leases, Plaintiffs assert that there has been a wrongful assertion of dominion or control by Defendant of the royalties due and owing to Plaintiffs under the terms and provisions of the Leases. Plaintiffs sue Defendant for all actual damages incurred as a result of Defendant' wrongful conversion. In this regard, Plaintiffs seek monetary relief over $1,000,000.00.

### I. BREACH OF CONTRACT CAUSE OF ACTION NUMBER ONE

43. Plaintiffs assert this cause of action for breaches of contract against Defendant in the alternative to all other relief requested herein. Plaintiffs allege the performance or occurrence of all conditions precedent have been performed or have occurred with regard to recovery on all elements of Plaintiffs' cause of action for breaches of contract against Defendant.

44. Plaintiffs have performed or tendered performance of their contractual obligations under the terms of the Leases.

45. Plaintiffs contend that the Leases have been breached or violated by Defendant. The provisions and/or paragraphs of the Leases, as applicable to the Defendant, that have been breached or violated include, but are not limited to the following:

    a. Defendant failed to properly calculate and pay all royalties owed in a timely manner; and

    b. Defendant failed to provide all information and data on all production from the Leases in a timely manner.

46. The foregoing breaches or violations of the Leases or contracts have caused damages to Plaintiffs, including but not limited to, lost royalties, lost value of royalties, lost revenue, royalties, costs, fees and expenses, including reasonable attorneys' fees, accountants' fees, engineers' fees, consultants' fees and/or experts' fees.

47. Plaintiffs have retained the law firm of Person, Whitworth, Borchers & Morales, L.L.P. law firm to represent Plaintiffs in this action and Plaintiffs have agreed to pay the law firms reasonable and necessary attorneys' fees. Plaintiffs seek to recover their reasonable and necessary attorneys' fees against Defendant, pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code. Plaintiffs also request an award of reasonable and necessary attorneys' fees and court costs against Defendant in the event an appeal is taken or made by Defendant.

48. To date, the Burns have calculated non-payments in excess of $8,105,685.90.

    J.   <u>BREACH OF CONTRACT CAUSE OF ACTION NUMBER TWO</u>

49. Under Paragraph 14 of the Burns Trust Lease, Lessee agrees to furnish Lessor with full and complete information pertinent to the calculation of royalty. The Burns Trust Lease also states that if Lessee fails to furnish Lessor the information within thirty (30) days after Lessor's demand then Lessee shall pay Lessor any amount equal to "Twenty Five Dollars ($25.00) per day per instrument requested beginning on the 30th day after the date of Lessor's request and continuing until such documents and information have been delivered to Lessor."

50. Plaintiffs requested that Defendant provide documents as early as February 18, 2013; however, Defendant refused to provide any documents until on or about February 26, 2015, on which date, only some of the requested documents were finally provided. Additional requests for documents and information were made following the February 2013 request, each of which were met with refusal by Defendant to provide the documents and a failure by Defendant to comply with the terms of the Leases. For each instrument that Defendant failed to provide timely, Plaintiffs request damages in the amount of Twenty Five Dollars per day beginning on the 30th day after each applicable request to Defendant from Plaintiffs to the date that the respective documents were finally provided.

### K.  BREACH OF CONTRACT CAUSE OF ACTION NUMBER THREE

51. The Agreement entered into on August 28, 2015, between Defendant and Plaintiffs and attached as **Exhibit H** has been breached by Defendant. Defendant failed to pay $130,000.00 in fees and expenses; failed to escrow required funds and failed to complete the audit and pay all sums owed as a result of the audit.

### L.  ACCOUNTING AND/OR AUDIT

52. Plaintiffs request that the Court order the Defendant to cooperate with a full accounting and/or audit pursuant to the Leases. Plaintiffs allege the performance or occurrence of all conditions precedent have been performed or have occurred for an accounting and/or audit.

53. Plaintiffs request that this Court enforce their rights to review, inspect and receive any and all documents as expressly provided in the Leases and order Defendant to comply with the Leases.

54. Plaintiffs request that this Court enforce those rights to audit which Plaintiffs have as set forth in the Leases and order Defendant to comply with the audit provisions in the Leases.

Pursuant to § 91.141 of the Texas Natural Resources Code, the Defendant must maintain books and records regarding the measuring and metering of production of gas and liquids and the calculation and payment of royalties thereon, including detailed explanations of any deductions and adjustments to royalties.  In addition to the protections provided to the Plaintiffs by the Texas Natural Resources Code, Plaintiffs have the right under the Leases to audit production, revenues and the calculation and payment of revenues. Plaintiffs hereby request an accounting and/or audit and a full explanation of all gas and liquid measurements, prices, production, and calculation of royalties as required by law and contract.

55. In connection with this claim or cause of action for an accounting and/or audit, Plaintiffs sue Defendant for any resulting deficiencies or non-payments of royalties, together with interest as provided by contract or law or as provided by the Texas Natural Resources Code.  Plaintiffs also sue Defendant for attorneys' fees expressly provided and allowed by the Leases.

### M. SECTION 91.401, ET SEQ., OF THE TEXAS NATURAL RESOURCES CODE

56. Without waiving the above and foregoing, Plaintiffs assert this cause of action pursuant to Section 91.401, et seq., of the Texas Natural Resources Code against Defendant in the alternative to all other relief requested herein.  Plaintiffs allege the performance or occurrence of all conditions precedent have been performed or have occurred with regard to recovery on all elements of Plaintiffs' cause of action pursuant to Section 91.401, et seq., of the Texas Natural Resources Code against Defendant

57. Section 91.404(c), et seq., of the Texas Natural Resources Code provides that a payee has a cause of action for non-payment of oil or gas proceeds or interest on those proceeds as required in § 91.402 or § 92.403 of said Code.  Plaintiffs seek to recover all damages from Defendant

relating to the non-payment of oil or gas proceeds and interest on those proceeds as required in § 91.402 or § 92.403 of the Texas Natural Resources Code.

58. To date, the Burns have calculated non-payments in excess of $8,105,685.90.

### N. NOTICE AND CONDITIONS PRECEDENT

59. Notice has been provided to Defendant prior to the filing of this suit and by service of Plaintiffs' pleadings in this action. Plaintiffs allege that all conditions precedent to the filing of and recovery on the aforementioned claims and causes of action have been performed, complied with and/or have occurred.

### O. NO RATIFICATION, REVIVOR OR NOVATION

60. In the event and to the extent that any of the Leases may have terminated, nothing contained herein shall be construed as a ratification, revivor, novation or creation of an interest in Defendant or any other individual or entity or claimant in any of the Leases that are the subject of this lawsuit.

### P. NO REPUDIATION

61. To the extent that the Leases have not terminated, nothing herein shall be construed as a repudiation of the Leases. The causes of action set forth herein related to trespass, trespass to try title, suit to quiet title and conversion are conditional upon the Court's initial determination(s) or declaration(s) set forth in the request for declaratory judgment action set forth above.

### Q. JURY DEMAND

62. Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Rule 9014 of the Bankruptcy Rules, Plaintiffs request a trial by Jury.

### R. REQUEST FOR RELIEF

63. Plaintiffs respectfully request that the Court enter judgment in their favor and award relief as follows:

   a. Plaintiffs request that this Court render the declaratory judgment relief sought by Plaintiffs as described or requested hereinabove;

   b. Subject to the declaratory judgment relief sought by Plaintiffs, Plaintiffs request that this Court render the trespass relief sought by Plaintiffs as described or requested hereinabove;

   c. Subject to the declaratory judgment relief sought by Plaintiffs, Plaintiffs request that this Court render the trespass to try title relief sought by Plaintiffs as described or requested hereinabove;

   d. Subject to the declaratory judgment relief sought by Plaintiffs, Plaintiffs request that this Court render the suit to quiet title relief sought by Plaintiffs as described or requested hereinabove;

   e. Subject to the declaratory judgment relief sought by Plaintiffs, Plaintiffs request that this Court render the conversion relief sought by Plaintiffs as described or requested hereinabove;

   f. Plaintiffs request that this Court render the breaches of contract sought by Plaintiffs as described or requested hereinabove;

   g. Plaintiffs request that this Court render the accounting and/or audit relief sought by Plaintiffs as described or requested hereinabove;

   h. Plaintiffs request that this Court render the relief sought by Plaintiffs pursuant to Section 91.401, et seq., of the Texas Natural Resources Code as described or requested hereinabove;

   i. Plaintiff request that this Court award Plaintiff in excess of $8,105,685.90, plus interest as required by the Leases or state law for non-payment of royalties;

   j. Plaintiffs request that this Court award Plaintiffs reasonable and necessary attorneys' fees and court costs against Defendant;

   k. Plaintiffs request that this Court award Plaintiffs pre- and post-judgment interest against Defendant; and

   l. Plaintiffs request that this Court award Plaintiffs such further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled to receive.

Respectfully submitted,

*/s/ Albert M. Gutierrez*
Albert M. Gutierrez
State Bar No. 00790806
Southern District Admission No. 18073
agutierrez@personwhitworth.com
Patrick J. Oegerle
State Bar No. 24041621
Southern District Admission No. 38910
poegerle@personwhitworth.com
Person, Whitworth, Borchers & Morales, L.L.P.
7744 Broadway, Suite 100
San Antonio, Texas 78209
Telephone No.: (210) 824-4411
Facsimile No.: (210) 225-2266

**ATTORNEYS FOR CAROLYN JULIA CLARK; MICHELE CLARK CADWALLADER, TRUSTEE OF THE CAROLYN JULIA CLARK FAMILY 2011 TRUST; CHRISTOPHER STUART CLARK, SUCCESSOR OF THE CHRISTOPHER STUART CLARK MANAGEMENT TRUST; CHRISTOPHER STUART CLARK, TRUSTEE OF THE CHRISTOPHER STUART CLARK FAMILY 2011 TRUST; MICHELE CLARK CADWALLADER, INDIVIDUALLY AND AS TRUSTEE OF THE MICHELE CLARK CADWALLADER FAMILY 2011 TRUST; ALDES HARRAND CADWALLADER V; WALTER CLARK CADWALLADER; 4819, LTD; KATHERINE BURNS TERRY HORLEN, TRUSTEE OF THE JOHN DAVID TERRY, III 1994 TRUST; KATHERINE BURNS TERRY HORLEN, TRUSTEE OF THE LISA CHRISTINE TERRY 1994 TRUST; AND BURNS RANCH ENTERPRISES, LLC**

**CERTIFICATE OF SERVICE**

18

I hereby certify that on June 29, 2016, I served a true and accurate copy of the foregoing document via EMF/CF on counsel for Debtors as follows:

Harry A. Perrin
hperrin@velaw.com
Bradley R. Foxman
bfoxman@velaw.com
Garrick C. Smith
gsmith@velaw.com
David S. Meyer
dmeyer@velaw.com
Lauren R. Kanzer
lkanzer@velaw.com

*/s/ Albert M. Gutierrez*