

ENTERED

07/26/2016

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| GOODRICH PETROLEUM | § | **CASE NO: 16-31975** |
| CORPORATION, *et al* | § | |
| | § | |
| GOODRICH PETROLEUM COMPANY, | § | **CASE NO: 16-31976** |
| L.L.C. | § | |
| | § | **Jointly Administered Order** |
| Debtor(s) | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

The Fallon Family, L.P. (the "Fallon Family"), has filed an Emergency Motion to Compel Assumption or Rejection of Fallon Settlement Agreement. The Fallon Settlement Agreement is not executory. Additionally, the Fallon Family's state law dissolution rights are not effective as to the Debtor pursuant to 11 U.S.C. § 544. For these reasons, the Fallon Family's motion to compel is denied.

### Background

On September 8, 1954, the Fallon Family L.P.'s predecessor-in-interest Silas F. Talbert executed a mineral rights lease covering a 487 acre tract of land located in Caddo and Desoto Parishes, Louisiana (the "Property"). (ECF No. 144 at 4). The lease, which contained a primary term of 5 years expiring in 1959, was properly recorded in the Conveyance Records of Caddo and DeSoto Parishes. The lease contained a Pugh Clause which provided that:

> In the event a part of the leased premises shall be validly combined and unitized with other lands, drilling on or production from such unit shall not serve to extend this lease so far as it includes any portion of the leased premises lying outside the unit; and as to the portion of the leased premises lying outside such unit or units this lease shall terminate thirty (30) days after the effective establishment of the unit, unless maintained by other operations or rental payments as herein provided.

*Id.* at 5.   During the primary lease term, four section-wide compulsory drilling units were established in the Property (Sections 13, 18, 19 and 24).   *Id.*   Upon expiration of the primary lease term on September 7, 1959, the Pugh Clause triggered and divided the Property into the four previously created units.

On February 28, 2012, the Fallon Family, L.P. filed suit in the 42nd Judicial District Court, DeSoto Parish, Louisiana against Goodrich and other parties asserting claims for termination of the mineral lease and for damages.   The Fallon Family alleged that, following termination of the primary lease term, the lease had terminated as to Sections 18, 19, and 24 at various times due to Defendants' failure to meet the requirements of the lease's continuous operations clause.   *Id.* at 5-6.

On October 2, 2014, the Fallon Family recorded two Notices of Pendency of Action (collectively the "Lis Pendens") in DeSoto and Caddo Parishes.   (ECF No. 303-1 at 3; ECF No. 303 at 8).   The Lis Pendens attached the mineral lease as an exhibit and indicated that the Fallon Family had filed suit seeking termination of the lease.   On October 6, 2014, just prior to trial, the Fallon Family and the defendants, including Goodrich, agreed to compromise all claims related to the lease.   (ECF No. 144 at 6).   On December 23, 2014, Goodrich and certain other defendants executed a Confidential Settlement Agreement and Release which satisfied "all claims which were alleged or could have been alleged in the . . . Lawsuit."   (ECF No. 144-1 at 18).   Goodrich agreed to pay the Fallon Family $650,000 via wire transfer within ten days of executing the agreement.   *Id.*   Goodrich further agreed to immediately deliver a promissory note in the amount of $1,000,000 to be payable in ten installments made every six months commencing on October 15, 2015.   *Id.* at 19.   It is undisputed that Goodrich promptly satisfied these obligations by wiring the $650,000 and delivering the required promissory note.

The Settlement Agreement also contained a provision stating that "[t]he Fallons and the Lessee Defendants hereby agree that the [1954] Lease . . . is hereby ratified, affirmed, and re-adopted in all respects." *Id.* at 21. The ratification clause required the parties to record an Amendment and Ratification in the Caddo and DeSota Parish conveyance records. *Id.* On January 14, 2015, the Amendment and Ratification was recorded in both parishes. (ECF No. 188 at 14).

Finally, the Settlement Agreement contained the following integration clause:

> This Agreement and its attachments and documents referenced herein contain the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties relating to the subject matter contained herein, superseding any prior oral or written agreements pertaining to said subject matter. No other promises, representations or other inducements have been made to any Party hereto in exchange for this Agreement, or shall be admissible as evidence regarding the interpretation of this Agreement should any dispute regarding or related to it arise.

(ECF No. 144-1 at 22-23).

On October 15, 2015, Goodrich made the first $100,000 payment due under the Promissory Note, leaving a balance of $900,000. (ECF No. 144 at 9). Goodrich failed to make the second $100,000 payment due on April 15, 2016. On April 15, 2016, Goodrich commenced this voluntary chapter 11 bankruptcy case.

### Procedural Posture

On May 9, 2016, the Fallon Family filed an emergency motion seeking to compel assumption or rejection of the Settlement Agreement pursuant to 11 U.S.C. § 365. (ECF No. 144). Goodrich filed an objection to the motion to compel on May 17, 2016. (ECF No. 188). At a hearing on the motion held on May 18, 2016, the Court requested additional briefing and carried the hearing to June 13, 2016. The Court took the motion to compel under advisement following the June 13 hearing.

**Analysis**

The Fallon Family argues that the Settlement Agreement constitutes a single agreement along with the Goodrich Promissory Note and the Lease Ratification Agreement. As a single agreement, they further argue, the Settlement Agreement is an executory contract and must be assumed or rejected by the Debtor in its entirety. The Court will first consider whether the Settlement Agreement is a single agreement.

*The Settlement Agreement and Promissory Are a Single Agreement*

The Fallon Family points to the integration clause in the Settlement Agreement as evidence that the Promissory Note is part and parcel of the Settlement Agreement. Specifically, the integration clause states "[t]his Agreement and its attachments *and documents referenced herein* contain the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties relating to the subject matter contained herein, superseding any prior oral or written agreements pertaining to said subject matter." (ECF No. 144-1 at 23) (emphasis added). The Promissory Note is not attached to the Settlement Agreement, but the precise terms of the note are discussed in great detail. The Settlement Agreement sets forth details about the required contents of the note. These details include the amount of the note, the dates on which payments were to be made, the requirement that the note include pertinent bank account information, the requirement for written notice to the Fallon Family regarding any change in payment method, and the requirement for an acceleration clause.

While Goodrich argues that the typical purpose of an integration clause is to exclude parol evidence and other oral testimony regarding contractual provisions, the plain language of the contract indicates that the Promissory Note and Settlement Agreement are fully integrated. The Promissory Note is a document referenced in the Settlement Agreement and is accordingly

part of the "entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties. . . ." The Court must give meaning to the plain language of the contract. *First Bank and Trust v. Redman Gaming of La., Inc.*, 131 So.3d 224, 228 (La. Ct. App. 2013).

*The Promissory Note, as a Component of the Settlement Agreement, Is Not Executory*

Although the Promissory Note was incorporated into the Settlement Agreement, it nevertheless is not an executory contract. 11 U.S.C. § 365(a) provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Courts in the Fifth Circuit apply the definition of "executory contract" provided by Professor Vern Countryman, known as the "Countryman definition." *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62-62 (5th Cir. 1994). An executory contract is "[a] contract under which the obligations of *both* the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Verne Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 460 (1973) (emphasis added).

The Settlement Agreement is not executory because the Fallon Family has already performed essentially all of its obligations under the contract. The Fallon Family had three major obligations under the Settlement Agreement: (1) it agreed to ratify the 1954 lease and record the ratification in Caddo and DeSota Parishes; (2) it agreed to a mutual release with Goodrich; (3) it agreed to dismiss the lawsuit against Goodrich with prejudice. All three have occurred. The Fallon Family argues that it is still required to maintain confidentiality under the Settlement Agreement and to interpret the lease "consistent with the September 24, 2013 ruling from the court in the Lawsuit, whereby the court held that the Lease contained a Pugh Clause. . .

." (ECF No. 144-1 at 21).  But it is well settled that a confidentiality agreement, standing alone, cannot make a contract executory.  *In re Sjoquist*, 484 B.R. 207, 214 (Bankr. C.D. Ca. 2012); *Anchor Resolutino Corp. v. State St. Bank & Trust Co. (In re Anchor Resolution Corp.*, 221 B.R. 330, 337 (Bankr. D. Del. 1998).  Nor can it be said that a breach of the lease interpretation provision would somehow be material.

Accordingly, the Settlement Agreement is not an executory contract which Goodrich can be compelled to assume or reject.

*The Debtor May Avoid the Fallon Family's State Law Right to Dissolve the Settlement Agreement*

Alternatively, the Fallon Family argues that, pursuant to Louisiana law, it may dissolve the Settlement Agreement in its entirety upon Goodrich's breach.  The Louisiana Civil Code Article 3081 provides that "[a] compromise does not effect a novation of the antecedent obligation.  When a party fails to perform a compromise, the other party may act to either enforce the compromise or to dissolve it and enforce his original claim."  La. Civ. Code art. 3081.  Although Goodrich challenges whether or not the Settlement Agreement only required Goodrich to *deliver* a promissory note, or make payments upon the note, that argument need not be addressed here.  Because the Family's dissolution rights are not effective against Goodrich under the Bankruptcy Code, the Fallon Family's Article 3081 argument is ultimately immaterial.

11 U.S.C. § 544 gives the debtor-in-possession strong arm powers to avoid certain unrecorded instruments.  Specifically:

(a) the trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a

> judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> …
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

*Id.* § 544. Section 544 allows the avoidance of a transfer of real property that is not perfected and accordingly not enforceable against a bona fide purchaser or lien creditor at the time the bankruptcy petition is filed. *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 295 (5th Cir. 1997). Although the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, Louisiana law defines that status. *Id.* at 298 ("While the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, state law defines that status.").

> The Louisiana Civil Code is clear that:
>
> The rights and obligations established or created by the following written instruments *are without effect* as to a third person *unless the instrument is registered by recording it* in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
>
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
>
> (2) The lease of an immovable.
> …
>
> (4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.

La. Civ. Code art. 3338. A mineral lease is an incorporeal immovable under Louisiana law.[1] La. Stat. § 31:18. Goodrich argues that the Fallon Family may not alter the terms of an incorporeal immovable, i.e. the 1954 Lease, through its unrecorded right of dissolution.[2]

---

[1] Immovable property is the civil law term for real estate. *See Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 777 (5th Cir. 1997). Incorporeal things are "those which are not manifest to the senses and which are

In support, Goodrich points to *In re Leeward Operators, LLC*, which involved certain unpaid oil and gas vendors who attempted to claim that their dissolution rights superceded those of recorded oil and gas privileges.  2012 WL 1073173 at * 3 (Bankr. W.D. La. Mar. 29, 2012). The Court held that the "seller's right to dissolution is effective even if the underlying sale document is not recorded.[3]  However, if the public record shows that the purchase price was paid, the seller's dissolution rights *are not effective against third parties*."  *Id.* (emphasis added) (footnote added).  Allowing dissolution rights to be effective against a third party would be wholly inconsistent with the public records doctrine codified into Louisiana law.  *Robertson v. Buoni*, 504 So.2d 860, 863 (La. 1987) (Lemmon, J., concurring) (citing A. Yiannopoulos, 2 Louisiana Civil Law Treatise-Property § 165 (2d ed. 1980)).

The Fallon Family argues that these cases do not apply because they involve a seller's right to dissolution of a sale or assignment, not a lessor's right to enforce or dissolve a compromise.  The Court fails to see a distinction.  In *Leeward*, the vendors attempted to dissolve a lease assignment which, according to the property records, was given in exchange for valuable consideration. 2012 WL 1073173 at *4.  Any dissolution would be contrary to the public records and prejudicial as to a third party.  *Id.*  Similarly, in this case the Fallon Family filed a Lis

conceived only by the understanding of the parties."  *Dunckelman v. Central La. Elec. Co.*, 291 So.2d 914 (La. Ct. App. 1974).

[2] The Fallon Family argues that § 544 is not applicable here because all the Family is seeking to do is dissolve the Settlement Agreement, allowing it to seek a declaration in state court that the 1954 Lease had expired by its own terms many years previously.  It argues that § 544 only allows Goodrich to avoid a *transfer* of property of the debtor, and simply dissolving a Settlement Agreement is not a transfer.  However, § 544 does not simply give the debtor the power to avoid transfers, it also gives the debtor all "rights and powers" of a bona fide purchaser.  As discussed below, Goodrich is attempting to use its status as a bona fide purchaser to hold the Fallon Family to the terms of a recorded instrument.  Whether or not the dissolution of a Settlement Agreement constitutes a "transfer" is immaterial.

[3] This case did not involve the settlement agreement governed by an Article 3081, but rather a conventional contract governed by Article 2081.  The language of the two provisions tracks closely.  Article 2081 reads: "[w]hen the obligor fails to perform, the obligee has the right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved."  La. Civ. Code art. 2013.

Pendens on October 2, 2014, indicating publicly that there was a dispute regarding the 1954

lease.  Then, on January 1, 2015, the Fallon Family and Goodrich recorded a lease ratification

which stated in part:

> NOW, THEREFORE, for the promises and covenants exchanged below, and other good and valuable consideration exchanged by the Parties on or near this date, *the receipt and sufficiency of which is hereby acknowledged*, the Parties agree:
>
> 1.  . . . [T]he Lease is hereby affirmed and ratified in its entirety, and remains in full force and effect;
>
> 2.  . . . [A]ll claims that the Lease, or any part thereof, terminated prior to the Effective Date are hereby released and waived, and that, if it ever should be determined that the Lease, or any part thereof, terminated prior to the Effective Date, that the Lease *ipso facto* shall be deemed ratified by the Parties hereto, retroactive to the moment of that termination, so that the Lease never ceased to be in full force and effect.

(ECF No. 188 at 16) (emphasis added).

If a hypothetical third party had examined the property records, the third party would

have seen the Lis Pendens referencing the 1954 Lease, then a Lease Ratification which

specifically indicated that all claims regarding the 1954 Lease were released and waived.  The

Lease Ratification indicated further that consideration—analogous to the purchase price in

*Leeward*—had been given and acknowledged as sufficient.  The Fallon Family exercising their

right to dissolve the Settlement Agreement based on a failure of consideration would contradict

the recorded instrument acknowledging receipt and sufficiency of consideration.  This is not

allowable under Louisiana law.  *See* La. Civ. Code art. 3342 ("A party to a recorded instrument

may not contradict the terms of the instrument or statements of fact it contains to the prejudice of

a third person who after its recordation acquires an interest in or over the immovable to which

the instrument relates.").

In response, the Fallon Family argues that its dissolution rights are simply a condition placed upon a recorded instrument and may be enforced against a third party despite not being recorded.  Article 3339 of the Louisiana Civil Code provides:

> A matter of capacity or authority, the occurrence of a suspensive or a resolutory condition, the exercise of an option or right of first refusal, a tacit acceptance, *a termination of rights that depends upon the occurrence of a condition*, and a similar matter pertaining to the rights and obligations evidenced by a recorded instrument are effective as to a third person although not evidenced of record.

(emphasis added).  However, this article applies to protect "[r]ights not established by written document or judgment, such as those created by operation of law or which go to capacity or authority. . . ."  *Feingerts v. D'Anna (In re D'Anna)*, 548 B.R. 155, 168 (Bankr. E.D. La. 2016).  For example, an oilfield operator—despite not recording its interest[4]—could prime a subsequently recorded interest in property because its lien arose by operation of law simply by providing services.  *Id.* (citing La. R.S. 9:4862).  Here, however, the Fallon Family's dissolution rights do not arise by operation of law: the Family would have to make the affirmative decision to dissolve the Settlement Agreement.  Article 3339 also applies to situations where a recorded instrument references an option or condition precedent such as an option of renewal.  *See Sparks v. United Title & Abstract, LLC*, 56 So.3d 302, 306 (La. Ct. App. 2010).  But no dissolution rights were mentioned in the actual recorded Lease Ratification, meaning a third party would not be put on notice regarding dissolution—particularly because receipt of consideration was acknowledged.  Article 3339 does not apply in this case.

As the Settlement Agreement is not executory and because the Fallon Family may not use Article 3339 to dissolve the Settlement Agreement, the motion to compel must be denied.

---

[4] Assuming the operator records its interest within 180 days of completing services.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **July 26, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE